MARTIN *vs*. THE MECHANICS BANK OF BALTIMORE.

APPEAL from *Baltimore* county court. *Assumpsit* by the holders of an inland bill of exchange against the payee. Plea, *non assumpsit*. At the trial, the plaintiffs, (now appellees,) gave in evidence an accepted bill of exchange, drawn on the 24th of August 1819, by *W. P. Strike*, on *W.* and *A. H. Woods*, for $645, and payable to the defendant, (the appellant,) or order, nine months after date, and delivered to the defendant, who endorsed it to *J. Hudson*, who endorsed to *W. M'Mechen*, who endorsed to the plaintiffs. The hand writing of all the parties to the bill was admitted; and it was also admitted that a regular and legal demand was made upon the acceptors on the day on which the bill became due, that they refused to pay it, and that due and legal notice of such refusal on the part of the acceptors, was on the same day given to the drawer, and each and every of the endorsors, and that the draft was also, on the same day, regularly protested for nonpayment. The defendant then gave in evidence, that *W. & A. H. Woods*, the acceptors of the bill, did, on the day on which the same was due, to wit, on the 27th of May 1820, and for a long time before, and until the 30th of December thereafter, keep an account with the plaintiffs, at their banking house in the city of *Baltimore*, by depositing, and from time to time checking out, money, and that on the day the bill became due, *W. & A. H. Woods* had no money in bank; but that on the 20th of June 1820, a balance was struck between said bank and said *W. & A. H. Woods*, and they then had in bank the sum of $700; that the plaintiffs are a banking institution at the city of *Baltimore*; that said bill was discounted by them before it became due, and was held by them from that time to the time of trial. On this evidence the defendant prayed the court to direct the jury, that the plaintiffs were not entitled to recover. Which the court, [*Hanson* and *Ward*, A. J.] refused to do. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

In an action on an inland bill of exchange, by an incorporated bank, as the holder of the bill which they had discounted before it became due, against the payee, evidence was given that the acceptors of the bill, on the day it became due, and for a long time before, and for several months thereafter, kept an account at the said bank, by depositing, and from time to time checking out money, and that on the day the bill became due they had no money in bank, but that afterwards a balance was struck between the bank and the acceptors, when they had a sum of money sufficient to have discharged the bill—*Held*, that the bank was entitled to recover the amount of the bill from the payee. That the conduct of the holders of the bill with regard to the acceptors, was not a waiver of their right against the endorsors, nor a release as to them. And as between the holders and the acceptors there was no payment.

The cause was argued before BUCHANAN, Ch. J. EARLE, MARTIN, and STEPHEN, J.

*Frick*, for the Appellant, raised the following points: 1. That the conduct of the appellees, as holders of the bill

in question, with regard to the acceptors thereof, was in law a waiver of their right against the endorsors, one of whom was the appellant,—*i. e.* as to the endorsors it was a release. 2. That as between the holders and acceptors there was a payment in full. He contended, 1. That this was an attempt to revive a debt which had been extinguished. That the special facts set forth, in the bill of exceptions operate to discharge the legal liability of the endorsors on the bill. That the bank having at one time had money enough in their hands to satisfy the same, were clearly entitled to apply it to the credit of the bill, and their *laches* in this particular is not to operate against the endorsor. No doctrine is clearer than that, in the absence of a specific appropriation, the *receiver* of money has the *right* of applying it. *Campbell vs. Hodgson,* 1 *Niel Gow,* 74, and the cases there cited. *Gwinn vs. Whitaker,* 1 *Harr. & Johns.* 754. Here the receivers neglected to apply it at all, and returned it to the acceptors of the bill, to the prejudice of the sureties on the bill, to the credit of which bill they were *bound* to apply it; because the act in itself amounts to an indulgence—a giving a *new credit* to the acceptors, without the concurrence of the other parties entitled to sue upon the bill. It is in *effect giving time to the acceptors,* to the injury of the other parties on the bill. And, shall the endorsor be said not to be injured where the holder has in his possession the funds of the acceptor, *the very means of satisfaction and payment,* yet waives the application of them to the bill? If this be not in effect a release, (as far as the endorsors are concerned,) it is at least an extension of credit, *a giving time,* that operates the same effect, and comes within a class of cases almost too numerous for reference. The general abstract of them is in *Chitty on Bills,* 371, 372, 375. The leading cases are *English vs. Darley,* 2 *Bos. & Pull.* 61. *Gould vs. Robson,* 8 *East,* 576. *Tindall vs. Brown,* 1 *T. R.* 167. *Clarke vs. Devlin,* 3 *Bos. & Pull.* 363. It will be seen that all these cases turn upon the *injury* which the endorsor sustains by the conduct of the holder with regard to the acceptor; and in this view the present case is stronger than any in the books. The holders were in fact paid the amount of the bill over and over, and often, yet suffered it to pass, and now, that the acceptors are insolvent, resort to the endorsors. That due notice was given, protest, &c. does not

1824.

Martin
vs
Mechanics Bank

alter the case. *Chitty on Bills,* 371, 372, 373. Look moreover at the state of the parties—The bill was due and protested on the 29th of May 1820; the acceptors continue their accounts and dealings with the holders until the 30th of December 1820; the endorsors are fairly to assume that the bill is included in the mutual debits and credits, and are left uninformed until the 6th of March 1821, when this suit is instituted, and the endorsors, for the first time after the protest, are informed that the bill is yet in existence.

2. If this view be not correct, if there was no giving time, it is contended that there was a payment, and this upon positive authorities. *Chitty on Bills,* 370. *Clayton's* case, 1 *Merivale,* 572. *Marsh vs. Houldith, Chitty on Bills,* 370. 2 *Bridg. Index,* 586, 587. *Sleeck's* case, 1 *Merivale,* 568. *Carr vs. Carr, Ibid.* 541, (*note.*) The principle is distinctly asserted by these authorities, that money paid into a banker's hands constitutes a debt, not a deposit. He becomes a debtor for the amount. That in account with bankers all entries go to reduce the earliest part of the account. *Clayton's* case was, that an unsecured banking account, continued after the death of one of the bankers by his surviving partners, who as such were liable to pay all debts incurred in the life-time of their deceased partner; and it was determined that the first monies paid in must be applied to any balance that at any time remained unsatisfied. In support of this principle the court are referred to *Hammersley vs. Knowyles,* 2 *Esp. Rep.* 666. *Dawe vs. Holdsworth, Peake's N. P. Cas.* 64. *Peters vs. Anderson,* 5 *Taunt.* 201. *Bodenham vs. Purchas,* 2 *Barnw. & Ald.* 39, 45, 46, 48. *Brooke vs. Enderby,* 2 *Brod. & Bing.* 70, and *Marsh vs. Houldith, Chitty on Bills,* 370.

*R. B. Magruder* and *Stricker,* for the Appellees. This is a question not merely between the parties in the record. It is an attempt to introduce a *new* principle, or to amplify an *old* one, and extend it beyond proper limits. The judges in *England* have uniformly resisted such attempts, and have adhered to *fixed* principles, even though inconvenient in their operation, and unwholesome. This may be illustrated by a reference to *Bickerdike vs. Bollman,* 1 *T. R.* 405. The rule established in that case has been re-

peatedly regretted, yet as repeatedly adhered to. *Wal-wyn vs. St. Quintin,* 1 *Bos. & Pull.* 652. 2 *Esp. Rep.* 516, S. C. *Staples vs. Okines,* 1 *Esp. Rep.* 332. *Orr vs. Maginnis,* 7 *East,* 362, *Legge vs. Thorpe,* 12 *East,* 175, *Exparte Wilson,* 11 *Ves.* 411. *Heath Exparte,* 2 *Ves. & Beames,* 240. So determined have been the judges to resist its further relaxation, that of late years it has been confined to its *letter,* and the *reason* upon which it was founded has been disregarded. *Staples vs. Okines. Orr vs. Maginnis. Hammond vs. Dufrane,* 3 *Camp.* 145, *Thackray vs. Bennett, Ibid.* 164. *Chitty on Bills,* 267, These cases show the necessity of resisting the *introduction of new principles,* and especially in relation to the *great circulating medium* of the commercial world, as *bills of exchange* and *promissory notes* may be emphatically called. The facts from the record present two questions. 1. Has the bank by its conduct or dealings with the acceptors, (Messrs. *Woods,*) *waived* its right of resort against the endorsors, or in other words, released the appellant, who is one of them? 2. Supposing the bank has not so released the appellants, as between the bank and the acceptors, was there "*a payment in full?*" In other words, do the circumstances set forth in the bill of exceptions constitute a payment in *fact,* or are they in *legal contemplation* a payment, producing by *operation of law* an extinguishment or annihilation of the debt due upon the bill, and of course a release of the endorsors.

1. As to the *first question.* What were the dealings complained of? The liability at the maturity of the note is admitted. What subsequent dealings or conduct of the bank have discharged that liability? If the dealings complained of have released the appellant, it must be upon the grounds of some prejudice to the rights of *subrogation,* viz. either 1st. An agreement not to sue. 2d. An agreement to extend the time, *(novatio debiti;)* or 3. A composition of part for the whole, &c. As to what a holder *may do,* and what he *may not do,* see *Chitty on Bills,* 371, and the cases referred to; also *Bordley vs. Buchanan,* 4 *Harr. & M'Hen.* 43. Is the case at bar within the principle of those cases? But it has been alleged that the bank received $700 from the acceptors, and might have paid themselves, and they ought in common justice to have done so—to have stopt this money for the benefit of the endorsors. No such

contract was made by the bank. *Non hæc in fœdera veni.* They made no such contract *in law.* Did they in equity? A creditor is not bound to use active diligence; *Wright vs. Simpson,* 6 *Ves.* 734. The utmost that a surety can do, is to apply to chancery, and *on terms,* get relief, by obliging a creditor not to exercise his *legal* privilege of not suing the principal, and *even then, he may sue the surety.* And for whom was the bank to exercise this *active diligence*—this *superabundance of sedulous solicitude*—this *extreme vigilance*—to watch and foster and protect—to violate its faith by stopping a sacred deposit—to stop perhaps the money of other people, and thereby risk a law suit? Was it for a surety who notified them of this balance? Or even *privately* offered an indemnity, much less through a court of chancery? Or was it for a debtor, who after violating his contract, and refusing to pay money lent upon the faith of *his* name, and damnifying his creditor, *craves* and defies him, and endeavours to shelter himself under legal shift, and technical subterfuge? It is impossible that such a defence can be sanctioned.

2. The *second question.* As between the bank and the acceptors, was there "*a payment in full?*" It will not be contended that there was any payment in *fact.* That this money so put in, deposited, or "*paid in,*" (if that expression is better liked,) was placed there *animo solvendi,* because the verdict negatives such an inference, and it is repudiated by all the circumstances. Payment is a matter *in pais,* and goes to the *gist* of the action. All the circumstances contradict the *fact* and *intention* of *paying.* Sometimes "*the circumstances*" amount *in law* to payment, and when proved support a plea of payment; thus *solvit ad diem* may be supported by the proof of certain facts; but this legal inference may be rebutted by other slight circumstances. So in the case at bar, it is contended that the circumstances stated in the bill of exceptions, amount *in law* to a payment, and by extinguishing and annihilating the debt on this bill, work a release of the endorsers. To maintain this position, the appellant must establish, 1st. A *right* in the bank to apply this money against the will of its debtor. 2d. An *imperative obligation* to do so for the benefit of the sureties. 3d. That as between *Woods* and the bank, *the law* attributed this money to the payment of this bill. 1st. The bank's right may be doubted. If

the right exist, it must be from assimilating a bank to a private banker in *England*. There are reasons why the bank might *not* possess it, even if a banker did; viz. Liens and other rights of bankers depend upon usage, and this usage differs in city and country, and between different cities. A customer is more *cautious* in depositing with a *private* banker, than with a bank. But admitting there is no difference between a bank and a banker, if a bank has the right, it must be from that of *lien* or set off. As to *lien.*—In *Davis vs. Bowsher,* 5 *T. R.* 488; Lord *Kenyon* says, "a banker has a lien upon every thing in his hands for his general balance, unless there be evidence to show *that he received any particular security under special circumstances* which would take it out of the common rule." And in *Giles vs. Perkins,* 9 *East,* 12, Lord *Ellenborough* says, that "a banker *has no lien upon any thing in his hands unless his cash account be overdrawn.*" Let the principle of these cases be applied to the case at bar; and let the question be asked, whether, if the *Woods* had failed on the 20th of June, their assignees could not have recovered the $700 for the general benefit of all the creditors? It is clear then from these cases, and the question last put, that the bank had no *lien*. As to *set off.*—It has been argued that the bank had the same right as an individual had to set off the $700. If an *individual* has the right, it does not follow that a bank has. The general idea is, that a *deposit* is sacred. Is it certain that either a bank or an *individual* has the right *under* such circumstances? A *creditor* having money remitted to him *clogged with a condition,* has no lien, and cannot *retain for his own debt. Williams vs. Everett,* 14 *East,* 587, 590. Bills put with a banker for a specific purpose, cannot be appropriated otherwise. *Parke vs. Eliason,* 1 *East,* 550. A creditor is bound to apply the money left with him, to the *particular* purpose it was left for, "unless he directly repudiated it." *De Barnales vs. Fuller,* 14 *East,* 590. After the acceptance of the deposit of $700, and the striking and *acknowledgment* of a balance, the circumstances amounted to a *direction by the debtor,* and an *assent by the bank,* to hold it *subject to Woods'* check, and that unless the bank so meant to hold, it was bound *forthwith* to *repudiate.* Hence the *right* of set off is not absolutely *certain.* 2d. Admitting the right both of lien and set off. *The right is one thing*—im-

perative *obligation* is another.   A *lien* is cumulative, and a *set off* a statutory privilege, not a common law *right.* The exercise of such right ought to be discretionary.   For example, the risk of gaming, usury, negro buying, &c. or reasons satisfactory to the bank why it should not *set off,* as that the money belonged to *other* people, charitable institution, &c.   The consequences of an imperative obligation to exercise this right, would be that the bank must look every day into the account of every man whose name is on a note. They must examine their transfer book—They must search the records for their mortgages, &c.   It comes back to the question—*Did the bank make any such contract?* It must be answered that it did not.   3.  Because this was a *bank's* account, did the *law* imperatively attribute the $700 to the payment of this bill, and thereby annihilate or extinguish the debt due thereon, and so release the endorsors?  *Clayton's* case, 1 *Merivale,* 610, supported by *Brooke vs. Enderby,* 2 *Bro. & Bing.* 70, and *Bodenham vs. Purchas,* 2 *Barnw. & Ald.* 45, has been relied upon by the appellants.   Before the case at bar is distinguished from *Clayton's* case, let us look at the different rules for the attributing, applying or appropriating payments.  1st *Rule.* That a *debtor* may peremptorily appropriate his payments, and if he neglect to do so, and his intention be not shown by circumstances, the *creditor* may apply.   *Newmarch vs. Clay,* 14 *East,* 239.   *Peters vs. Anderson,* 5 *Taunt.* 201. *Plomer vs. Long,* 1 *Stark.* 153.   *Bodenham vs. Purchas,* 2 *Barnw. & Ald.* 45.   *Gwinn vs. Whitaker,* 1 *Harr. & Johns.* 755.   2d *Rule.* That a debtor to a *banker* even has a right *peremptorily* to direct the appropriation of his money; and though indebted to the banker, may direct him to pay the money to a *stranger.   De Barnales vs. Fuller,* 14 *East,* 590, *(note.)   Kilsby vs. Williams,* 5 *Barnw. & Ald.* 815.   And creditor, (a banker,) having money remitted to him, *clogged with a condition,* cannot apply it to pay his own debt.   *Williams vs. Everett,* 14 *East,* 587, 590. And creditor having bills deposited with him for a specific purpose, cannot appropriate them otherwise.   *Parker vs. Eliason,* 1 *East,* 550.  3d *Rule.* That in *all* cases, debtor and creditor may *agree* as to the appropriation of money, and may determine its character.   This is admitted in *Clayton's* case, 1 *Mer.* 599, 610, and in *Bodenham vs. Purchas.*  May be a *deposit* and not *a payment,* if the

parties so agree. *Hammersley vs. Knowlys*, 2 *Esp. Rep.* 667. *De Barnales vs. Fuller*, 14 *East*, 590, establishes it a *deposit*, because the bank did not ' 'repudiate it as such *directly.*" 4th *Rule*. Appropriation may be inferred "from circumstances,"in *all* cases, even bankers. *Hammersley vs. Knowlys*. *Marsh vs. Houldith*, *Chitty*, 370. *Newmarch vs. Clay. Peters vs. Anderson. Bodenham vs. Purchas*] *Kilsby vs. Williams*, and *Clayton's* case. But in the *absence* of appropriation by debtor, or by agreement, or by *circumstances* showing the appropriation, the rule in *Clayton's* case applies. Now the case at bar falls within *none* of these rules, because the $700 were not put into bank *animo solvendi*—it was no *payment*. But admitting it was: 1st. The manner of keeping the cash account showed an express agreement, amounting to a direction by the debtor that this $700 should be attributed to *Woods'* *cash* drafts, or checks, and that his cash dealings should be kept distinct from his other. No agreement could be more express than the *bank book*, which was in writing, and the bill of exceptions states that it was an account kept "by depositing, and from time to time checking out money." 2d. The "*circumstances*" showed such an appropriation by the debtor, or such a concurrence between debtor and creditor as is before stated, if the bank book, and fact stated in the bill of exceptions, do not show an *express* appropriation. The course of dealings—the mode of keeping the cash account—the refusal to pay the bill—suffering a protest and leaving the bill in the hands of the bank till the trial—the bank furnishing, and *Woods'* accepting after the 27th of May, an account in which the bank is their debtor $700, *without objecting*—their refusing to check to take up the bill—the bank leaving the bill out of their account, and not insisting to apply this money to it, prove the intention of the parties. 3d. There being distinct and separate accounts and dealings between the bank and *Woods*, viz. the debt upon this bill, and the *cash* account, and perhaps other notes and bills, there was not "an entire, unbroken account of all the transactions kept between the parties." The inference is 1st. The case is of course distinguishable from *Clayton's* case. 2d. It falls within the *first rule* laid down, that if debtor neglect, &c. creditor may attribute, and the bank did attribute it to the cash account between the 20th of June and 30th December. It is believed that it has

been shown, 1st. That the bank did no act to release the sureties within the principle of *English vs. Warley*, or *Bordly vs. Buchanan.* 2d. That the bank had no lien, no right of set off, even if an individual would have had. 3d. That if it had both, there was no *imperative* obligation to exercise the right. 4th. That the *law* did not, under any of the rules for attributing payments, oblige the bank, *at its peril*, to apply the \$700 to the payment of the bill.

1824.

Martin
vs
Mechanics Bank.

*Glenn*, in reply. 1. This case shows more than supineness—it shows a treating with the principal debtor, so as to affect the surety, as in the case of *Gould vs. Robson*, 8 *East*, 576. While this money was in the hands of the bank it could not sue, as a set off extinguished the debt, and the subsequent dealing with acceptors is at the peril of the holders. The bank has an election, but it is at its peril, otherwise a protested note or bill is a continuing guarantee for any subsequent advances. 2. A party paying has a right to appropriate if he do so at the time of payment. *De Barnales vs. Fuller*, 14 *East*, 590, (note.) If he omit to do so, the creditor has a right exercisable at any time, unless acts or circumstances show an intention of the debtor to appropriate. *Clayton's* case, 1 *Merivale*, 585. This as between the parties; but as relates to sureties, if both debtor and creditor omit to appropriate, the law makes it. *Gwinn vs. Whitaker*, 1 *Harr. & Johns.* 755. *Wallace vs. Johnson*, 3 *Harr. & M'Hen.* 590. Payments are always made in discharge of a subsisting debt. *Hammersley vs. Knowlys*, 2 *Esp. Rep.* 666. In the case of mutual debts, the balance only is due. *Edmeads vs. Newman*, 1 *Barnw. & Cressw.* 418. As between bankers, where a balance is due in favour of acceptor, or original debtor, the note is paid. *Marsh vs. Houldith*, *Chitty on Bills*, 370, and *Hammersley vs. Knowlys*, 2 *Esp. Rep.* 666.

BUCHANAN, Ch. J. delivered the opinion of the court. Two points were presented to the consideration of the court in the discussion of this case—*First*, That the transactions set out in the bill of exceptions, between the appellees and *W.* and *A. H. Woods*, amounted in law to a waiver of their right of action, or to an exoneration of the appellant from all liability on account of his endorsement; and *second*, that by operation of law they amounted to a payment in full of the bill; which, beginning with the last,

will be briefly examined.   It is regretted that the account current between *W.* and *A. H. Woods*, and the appellees, does not appear in the record, by which the character of their dealings might be more distinctly developed, than by the statement in the bill of exceptions, which is, "that on the 27th of May 1820, the day on which the bill fell due, and for a long time before, and until the 30th of December following, the Messrs. *Woods* kept an account with the appellees at their banking house, by depositing, and from time to time checking out money; that on the day the bill became due, they had no money in bank, but that on the 20th of June following the account was balanced, when it appeared that the Messrs. *Woods* had in bank the sum of $700.   That the bill was discounted before it became due, and has ever since been held by the appellees."   Now if the amount of the bill in question formed an item of debt against the Messrs. *Woods* in that account, making one continued and entire account of all their dealings, and was so treated by the parties, the principle of *Clayton's* case, 1 *Merivale*, 572, and of *Bodenham and Philips vs. Purchas*, 2 *Barnw. & Ald.* 39, would apply; and the balance struck, being the balance of one entire account, embracing all the transactions between the parties, the amount of the bill constituting a part of the aggregate amount, on the debtor side of the account, it would follow, (the credits exceeding the debits,) that the amount of the bill was sunk, and the bill in contemplation of law discharged, and could not be revived as against the endorsors.   But if it was in fact, an item of charge in the account, it was incumbent on the appellant to show it; and not having done so, we must take what appears in the bill of exceptions as our guide; and looking to that only, it would seem very clear, that the amount of the bill was not carried into the account, but that it was a cash account, consisting entirely of monies lodged in and checked out of bank, unconnected with any other transaction.   In which, according to the usual course of such transactions, the bank must have stood charged with the sums placed in, and credited by the amounts checked out.   The statement is, that the Messrs. *Woods* kept an account with the appellees, "by depositing, and from time to time, checking out money," confining it in terms to an account of deposits and checks, and excluding the idea of any thing else

forming an item in the account. The case of *Hammersley vs. Knowlys*, 2 *Esp. Rep.* 666, much relied on in argument, was this—The defendant lent his note to one Jefferys for his accommodation, who, upon the faith of that note, and others, which he lodged with the plaintiffs as his bankers, borrowed of them the amount. *Jefferys* afterwards made a considerable payment into the house, and promised to pay the *balance*, but in no otherwise made any particular appropriation at the time of the sum paid. The amount of the notes on which the money was lent, constituted the then only subsisting debt. *Jefferys* afterwards became insolvent, and the suit was brought on the note lent to him by the defendant, in order to cover the general balance which had become due from him to the plaintiffs. But it was held, that as the only subsisting debt, at the time the payment was made by *Jefferys* on account, arose on the notes deposited with the plaintiffs, the amount paid could not be considered as a mere deposit, but should be applied to that account, and the plaintiffs were only permitted to recover the balance due on the notes, after deducting the amount paid; which is not like this case; there money was advanced to *Jefferys* on the faith of certain notes deposited as a security, the amount of which was charged to him in account, and constituted the only debit; and from his saying, when he made a payment into the house, *that he would pay the balance* when he received certain money which he expected, it is obvious that he intended it as a payment in part of the debt he then owed the plaintiffs, as by *balance* he could only have meant, the amount remaining due, after deducting the sum paid; and as the only debt he then owed them arose on the notes deposited, he must have intended it as a payment on that account, and in part discharge of those notes. But here no money was loaned or advanced by the appellees on the accepted bill to the Messrs. *Woods*, nor is there the remotest ground for supposing, that any of the different sums of money, occasionally lodged by them in Bank, were either paid or received on that account. On the contrary, it is manifest that they were not. The principle that where a man indebted on several accounts, makes a partial payment, without applying it particularly to either, the creditor may make the appropriation, does not affect this case. The nature of a transaction may be such, as to show how a pay-

ment was applied, without any express appropriation at the time by the party making it; and the circumstance that the bill in question was neither taken up by the Messrs. *Woods*, nor cancelled, which should have been done by the proper officer of the bank, if the monies placed there by them were either paid or received on that account, shows that it was not so intended or understood by either party. But the proof is, that for a long time before and after the bill became due, the Messrs. *Woods* kept an account with the plaintiffs at their banking house, by depositing, and from time to time checking out money, and that on a balance being struck upon that account, on the 20th of June, (some time after the bill was due,) the Messrs. *Woods* then had in bank the sum of $700; but that on the day the bill became due they had no money in bank. Not that the account had then been closed, and a new account afterwards opened, on which the balance of $700 appeared on the 20th of June, but that on examination the sums deposited were found not to exceed in amount, on the day the bill became due, the checks that had been issued, though no settlement appears to have been made, nor any balance struck; but it remained an open running account, consisting entirely of monies lodged in and checked out of bank, on which the sums placed in bank, after the bill was due, produced the balance that was afterwards struck on the 20th of June, the amount of the bill not constituting an item in that account, nor entering at all into the contemplation of the parties. And being a continuing unsettled account, all the monies lodged in bank, after the bill became due, must be understood, (nothing appearing to the contrary,) as having been so placed there, on the same terms, and with the same understanding between the parties, that accompanied the antecedent transactions composing that account; and it as clearly appears how they were applied, as if there had been an express appropriation of them at the time; that is, they were applied to the account of deposits and checks, in the language of the bill of exceptions, and the application being thus made by the parties themselves, the law will not make a different appropriation, which could not be done without violating the manifest understanding and intention of the parties. It is not the case of a general payment, of which no application was made at the time by either party, but a particular application by the respective

parties, for their mutual benefit and convenience, according to the common course of business in our monied institutions, of funds placed in bank for that especial purpose, which they had a right to make; and the transactions between them, in relation to the monies so placed in bank, did not by operation of law, amount to a payment and discharge of the bill, under the circumstances marking the character of the case.

The other position, "that the transactions between the appellees and *W.* and *A. H. Woods,* amounted in law to a waiver of their right of action, or to an exoneration of the appellant from all liability on account of his endorsement," is equally unsustained.

The holder of a bill may forbear to sue the acceptor as long as he pleases, and will not thereby discharge the other parties from their liability, provided he does not agree to give time to the acceptor, without their concurrence.

And if there was no obligation of active diligence on the plaintiffs, as holders of the bill, to sue *W.* and *A. H. Woods,* the acceptors, for the benefit of the endorsors, they were under no obligation to violate the terms on which the money was obviously placed in bank, and apply it to the payment of the bill for the benefit of the endorsors. It would have been an abuse of the confidence reposed in them by *W.* and *A. H. Woods,* for whom the bill was not discounted, and there was no greater obligation of active diligence in one case than the other.

The mere placing money in bank on deposit by the Messrs. *Woods,* had not of itself the effect to discharge the appellant from his liability as endorsor of the bill; and the not diverting, by the plaintiffs, the money from the purpose for which it was so placed, and received by them in bank, and applying it to the payment of the bill, was not more to the prejudice of the endorsors, than their forbearing to sue the acceptors, and did not amount in law to a waiver of their right of action against either of the parties.

JUDGMENT AFFIRMED.