NICHOLAS PHELAN AND ROBERT BOGUE *vs.* JOS. CROSBY.— *June* 1845.

The plaintiff proved, that on the 3rd March 1841, he sold and delivered to the defendant a quantity of merchandize, to the value of $494.25, and there rested his cause. The defendant offered in evidence a bill of parcels, for the same merchandize, of the same date and amount, at six months, due 3–6 September 1841, on which was written by the plaintiffs : "Received payment for above as follows, *R's* note, dated 16th December 1840, *a* 5 ms., due 16th May for $484.79. Interest on amount of note from 16th May to 3rd September, $8.55. Cash for balance, $0.91." The plaintiff produced the note in court, and offered to deliver it up ; and proved, that on the 4th May *R.* applied for a release under the insolvent laws. The note was in blank, and the defendant, at the time he passed it to plaintiff, refused to endorse it. There was evidence given, without exception, that the plaintiffs, after inquiry about *R.*, at the request of the defendant, agreed to take the note at their own risk ; that the defendant knew, before the time of his purchase, that *R.* did not pay his notes at maturity, and also evidence from which the jury might infer fraud on the part of the defendant. HELD :

1st. Under the act of 1825, ch. 117, this court only reviews the questions decided by the county court, so that, where evidence is given without exception, the parties cannot object to its admissibility in this court.

2nd. That the receipt was evidence of payment, and the plaintiffs, upon the surrender of the note of *R.*, were not necessarily entitled to a verdict.

3rd. That the knowledge by the defendant, when he passed the note, that its maker was in a failing condition, did not, under the circumstances of the case, make the passing of the note a fraud upon the plaintiffs.

4th. That there was no evidence that the defendant concealed the informamation he had, in relation to *R.*, from the plaintiffs, at the time of passing away the note.

5th. That if the note of *R.* was received by the plaintiffs in payment, without recourse to the defendant, in the event of its being dishonored, then he is not entitled to recover, unless the jury shall find the transfer to have been fraudulently made.

Phelan & Bogue *vs.* Crosby.—1845.

6th. That if the sale was made upon a credit, not expired when the action was brought, then the plaintiffs are not entitled to recover in *assumpsit*, although the note was received but as collateral security, and not in payment.

A judgment at law reversed, without prejudice.

APPEAL from *Baltimore* County Court.

This was an action of *assumpsit*, brought on the 3rd June 1841, by the appellants against the appellee. They declared upon the common counts, to which the defendant pleaded the general issue.

The plaintiffs, to support the issue on their part joined, offered in evidence to the jury, that on the 3rd day of March 1841, they had sold and delivered to the defendant, a quantity of segars, to the amount of $494.25. The defendant thereupon offered in evidence the following bill and receipt:

"<i>Baltimore</i>, March 3rd, 1841.

*Mr. J. Crosby* bought of *Phelan & Bogue,*

| | | | | | |
|---|---|---|---|---|---|
| 3000 Segars in bundles, | *a* | $10, | - | - | $ 30 00 |
| 23¼ *M* do. in flat boxes | *a* | 10, | - | - | 232 50 |
| 25¾ *M* do.    do. | *a* | 9, | - | - | 231 75 |
| Six months, due Sept. 3–6. | | | | | —————— |
| | | | | | $494 25 |

Received payment for above, as follows :

| | | | | |
|---|---|---|---|---|
| *R. Moore's* note, date Dec. 16, '40, | | | | |
| five ms. due May 16, for | - | - | $484 79 | |
| Interest on am't of note, from May | | | | |
| 16th to September 3, | - | - | 8 55 | |
| Cash for balance, | - | - | 91 | |
| | | | —————— | $494 25 |

PHELAN & BOGUE."

And proved the signature to the said receipt to be in the hand writing of the plaintiffs.

Whereupon the plaintiffs produced in court, and offered to deliver up to the defendant, the note of *R. Moore*, mentioned in said bill and receipt; and proved, that the said *Moore*, on the 4th day of May 1841, applied for the benefit of the insolvent laws.

The defendant then offered in evidence by *Mr. Lanahan,* a competent witness, that in the spring of 1841, he had a conversation with *Phelan,* one of the plaintiffs, in which *Phelan* stated to witness, that he and *Bogue* had sued, or were about to sue the defendant; that defendant had swindled them. That witness then inquired of him, whether in the sale of the segars referred to, they had not agreed to take *Moore's* note at their own risk? That *Phelan* replied they had, and that the defendant had refused to endorse said note, (which it was admitted, at the time it was passed to plaintiffs was in blank, and in favor of no particular payee,) and requested the plaintiffs before receiving it, to inquire into the credit and condition of the said *Moore ;* that said plaintiff had, accordingly, made inquiry of *R. Lemmon & Co.*, and *F. Boyle,* and that upon their representation of *Moore's* solvency, had traded the segars for the note.

The plaintiffs thereupon offered in evidence, that the defendant, in the fall of 1840, and winter of 1841, held several notes of said *Moore,* one of which, for $733, fell due on the 17th January 1841, and was unpaid at maturity. That another, for $473, fell due on the 18th February 1841, and was also unpaid at maturity. That the defendant, after said notes were due and unpaid, applied to said *Moore* to renew said notes in divided sums, making four notes, all of which were drawn in blank. That at the time they were signed, said *Moore* stated to the defendant, that he could not pay them at maturity; that defendant replied, that made no difference, he wanted to get them discounted at bank, and that if he, *Moore,* was not able to pay them when they fell due, that the defendant would pay or assist *Moore* to pay them. The witness stated, that the note hereinbefore mentioned, was not one of said four renewed notes. Said renewed notes having been given for the debt of another, for whom *Moore* was an endorser, whereas the note in question, was given by *Moore* for a debt contracted by himself with the defendant. The plaintiffs further offered in evidence by *John P. Adams,* a competent witness, that sometime in the winter of 1841, the defendant

offered the note in question, in blank, to witness in exchange for segars. That witness, in conformity with a suggestion from the defendant, who refused to endorse said note, made inquiries in regard to the drawer, which proving unsatisfactory, he declined the arrangement proposed by, and returned the note to the said defendant. They also proved by *Mr. Plowman*, a competent witness, that about the same time, in 1841, he was applied to by the defendant, who stated his wish to trade said note for sugar, with *M. Bathurst & Son*, and requested said *Plowman* to negotiate said arrangement for him, that *Plowman* declined to do so, unless the defendant would endorse the note, which he refused to do. That defendant then applied to witness to know, what he would take to guarantee said note? Witness declined to make such arrangement, and inquired of defendant, why he would not endorse the note himself? who replied, that he did not like to put his name on the back of the note of *Moore*, who had already suffered others held by him, to lay over.

Whereupon the plaintiffs offered the following prayers:

1. That the receipt given in evidence in this cause, is no evidence of payment, and that it is no bar to the plaintiffs' recovery, on their surrendering up to defendant the note of *Moore*, mentioned in said receipt.

2. If the jury believe, that the defendant, when he gave the note of *Moore* to plaintiffs, knew that the maker of such note was in a failing condition; that passing it off to plaintiffs, was a fraud upon them, and is no bar to their suit in this case.

3. If the jury believe, that when *Moore* gave the note aforesaid to defendant, he stated to him his inability to pay them at maturity; and that *Crosby* said to *Moore*, he did not expect him to pay them, but he wanted them to get discounted, and would pay them himself, or help said *Moore* to pay them, at maturity; and if the jury further find, that *Crosby* knew said *Moore's* notes were laying over and had been protested, and prevailed on *Moore*, in the close of February or beginning of March, to give him the note now in question, dating it in December previous; and that defendant, when he passed said

note to plaintiffs, concealed this information from plaintiffs, then this note is no bar to plaintiffs' recovery, if such note proved to be of no value, and the same is now tendered to be delivered to the defendant.

And the defendant offered the following prayers:

1. If the jury find from the evidence, the sale and delivery of the goods, for which this suit is brought by the plaintiffs, to have been made to the defendant on the 3rd day of March 1841, for the sum of $494.25; and shall also find, that the note of *Robert Moore*, produced in evidence, was received by said plaintiffs from said defendant, in payment of said sum, and without the right of recourse to said defendant, by said plaintiffs, in the event of said notes being dishonored, and not paid, that then the plaintiffs are not entitled to recover in this suit, unless the jury shall find the transfer of said note, by the defendant to the plaintiffs, to have been fraudulently made.

2. If the jury find from the evidence, the sale and delivery stated in the preceding prayer, and that the same was made upon a credit of six months, from the 3rd of March 1841, that then the plaintiffs are not entitled to recover in this suit, although the jury shall believe, that the note of *Robert Moore*, mentioned in said first prayer, was received by said plaintiffs but as collateral security, and not in payment for said goods, said credit not having expired when this suit was instituted.

All of which, with the exception of the first and second prayers, offered on the part of the defendant, the court, (MAGRUDER and PURVIANCE, A. J.,) refused.

To which refusal to grant the plaintiffs' prayers, and to the granting of the defendant's prayers, and each of them, the plaintiffs excepted.

The verdict and judgment being against the plaintiffs, they prosecuted the present appeal.

The cause was argued before DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By GLENN and REVERDY JOHNSON for the appellants, and By NELSON for the appellees.

MAGRUDER, J., delivered the following dissenting opinion upon the 2nd prayer of the defendant.

The plaintiffs in error, brought this action in *Baltimore* county court, for goods sold and delivered, and the proof in support of their claim, as set forth in the bill of exceptions, was, that "on the 3rd March 1840, they sold and delivered to the defendant, a quantity of segars, to the amount of $494.25." This is the sum which they claimed, and upon this proof, they rested their claim.

The defendant, in order to resist this claim, and to prevent a recovery by the plaintiff, offered in proof, a bill of parcels, dated on the same day, charging the defendant with "segars," at 6 mo., due Sept. 3rd–6th, $494.25.

At the foot of this bill, it is stated. "Received payment for above as follows:

*R. Moore's* note, dated 16 Dec'r. 1840, 3 months
    due May 16, for  -    -    -    -    -    $484 79
Interest on amount of note, from May 16, to September 3,  -  -  -  -  -  -  -    8 55
Cash for balance    -    -    -    -    -    91

                                        $494 25"

And then follows the signature of the plaintiffs in error.

This paper, offered by the defendant, he contended, proved,

1st. That the claim of the plaintiffs against the defendant, for the segars, was satisfied by the acceptance of the note: and

2ndly. It was insisted, that the claim, (if not satisfied,) was not due until September 6th, and that the action was prematurely brought.

Whether upon either of these grounds the defendant was entitled to a verdict, we are required to decide.

One ground of defence to the action then is, that unless he was guilty of an alleged fraud, the defendant has been paid for the segars, and no recovery could be had, although the institution of this suit had been delayed until the credit expired. This defence is grounded upon the paper, which was offered in evidence by the defendant, (the bill and statement which

follows it,) and this paper, it is said, is to be taken in connection with, and its meaning may be ascertained by the parol evidence, which the defendant adduced.

It is true, that a mere receipt, (not under seal,) is but *prima facie* evidence, that the sum of money mentioned in it, was paid, and of course, oral evidence is admissible to contradict it, to prove what sum was paid, and when paid.    Abundance of authority to this effect, may be found collected in *2nd Saunders, on Pleading and Evidence*, 308, 309, (*1st Am. Edit.*) When, however, an attempt is made by oral proof, to contradict the receipt, it is usually made, not by the party who offers it in evidence, but by his adversary.    By what evidence the claim was established in this case, the bill of exceptions does not inform us, but at no period of the trial, could this paper have been admitted, if offered by the plaintiffs.    It was introduced into the cause by the defendant, and shall he, who offers the written testimony, be permitted, by parol proof, to falsify it? To insist that its meaning ought to be disregarded, if its meaning, when collected from its words, is not corroborated by the oral proof?

The general rule is, that parol proof is not admissible to alter or vary, (to falsify) the written paper, and this rule is to be observed, even when the parol testimony is offered by the adverse party, except in cases of latent ambiguity, fraud, mistake, or surprise.    Hence, the rejection of parol testimony, in the case of *Kemmil vs. Wilson*, 4 *Washington's C. C. R.*, 308, and in *Batters vs. Sellers and Patterson*, 6 *H. & J.* 247, and in other cases, many of which are to be met with in the report of the latter case.    See also *1st Phil. on Ev.* 410, a receipt not under seal, is an exception to the rule; but a paper, one object of which is to furnish an acknowledgment of the receipt of money, may contain other matter, which cannot be varied, or contradicted by oral proof.    In the case of *Batters*, just mentioned, if, at the bottom of the bill of parcels, there had been a receipt in full, signed by the other party, and in an action by the latter party, to recover the prices of the broad cloths, the defendant had offered in evidence that receipt, no

doubt, oral proof would have been admissible, to explain or vary it, but the receipt at the bottom, would not have authorized the defendant to offer the parol testimony, which the report of the case tells us, was rejected by the court.

We are told in *Phillips* 443, 444, of cases, in which oral proof of independent facts, collateral to the written instrument, may be admitted, but that doctrine has no application to this case.

It is undisputed, in this case, that almost every thing which was received by the plaintiffs, for their segars, consisted of a note of hand, of a third person, and that note, (the names of the parties, the sum for which it was given, the date, time of payment, and every thing said about the note,) is accurately described in the receipt, yet the parol proof was offered, to contradict the written paper, if the words of the written paper, do not mean precisely what the defendant wishes them to mean. I entertain the opinion, that, without introducing another exception to the general rule, which declares parol testimony to be inadmissible, to vary, or contradict a written instrument, this parol testimony, (offered by the defendant too,) must be entirely disregarded in deciding the question, whether the transfer by the defendant, and acceptance by the plaintiff, of the promissory note, mentioned in the receipt, was an extinguishment of so much of the plaintiffs' claim, for the segars, or only entitled the defendant to a credit on account thereof, when the money was received from the maker of it? The case of *Kellogg vs. Richards*, 14*th Wendell* 116, seems to sustain this opinion.

If indeed, in a case like this now before us, parol proof is admitted to contradict the written instrument, with what propriety could the Court of Appeals, in the case, 2 *G. & J.* 494, undertake to say, what the meaning of the paper was, and to collect that meaning from its words? Surely the absence of parol testimony, expressly contradicting it, could not have taken the meaning of the contract from the jury, if (in case there was any such testimony,) the verdict of the jury was to be influenced by it. The case went back to be tried again,

and it was sent back, with this opinion of the court; yet if the party who had been unsuccessful in the Court of Appeals, had been so fortunate upon the second trial, as to prove by a witness, something about the meaning of the parties to that paper ; some acknowledgment by his adversary, which might be understood by the jury to mean, that the plaintiff did not understand the contract, as the Court of Appeals understood it, would such parol testimony have authorized the second jury, to interpret the contract, otherwise than as it had been interpreted by the court of *dernier resort?*

But it is said, that the parol testimony was admitted, without objection.    True, but this cannot alter the law of the case.    For what purpose it was introduced, does not appear; but its introduction into the case, even by consent, could not authorise us to learn from it the meaning of the instrument, if the law requires, that its meaning be collected from its words. Parol testimony, introduced without opposition, that the testator declared it to be his meaning, to devise a fee, could not be admitted to change the meaning of the will, when interpreted by its words, and thus make a fee of an estate for life.

The question then, according to my view of the case, is: What was the contract between those parties, in relation to this note?    Was the note received by the parties, as collateral security, or in satisfaction, as an extinguishment of the claim of the plaintiffs, for the segars? and the answer to this question, must be found in the written paper.

In the case of *Glenn vs. Smith,* 2 *G. & J.* 494, it was decided by this court, that to give the acceptance of a note, the effect of an absolute payment, or extinguishment of a debt, a contract that it should be so, must be shown, and that this was not sufficiently done by the receipt in that case.    The receipt said, that the promissory note had been received, "in payment of the above account."    Is the paper, the legal effect of which is now to be ascertained, like that, in the case last mentioned? Was its operation only to suspend the plaintiffs' right of action, until the note of *Moore* became due?

Now, it is going very far to say, that a man has not been paid for his goods, when he, who alone is interested in a denial of the payment, acknowledges that something which he has received, was received by him *in payment.* This however, is *res adjudicata.* In the case before us, the plaintiffs say something more. They give the credits, to which the defendant is entitled, as well as the price of the article which they sold to him, and after crediting the amount of the note, and the interest upon it, it being ascertained that those two credits, still leave a balance due for the segars. The next acknowledgment by the plaintiffs is, that on the self same day, when the note was received by them *as payment,* they received "cash for balance." Surely, when the creditor acknowledges that the balance of his claim has been paid, and paid to him in cash, he ought not to be allowed to say, that the whole debt, with the exception of the balance, (which is admitted to be paid,) is still due. This would be, to deprive a creditor of the privilege of making his own contract with his debtor, and in this case, of exchanging his segars for the promissory note of a third person; and this, by assuming that he did not mean what the words, which are used by himself, to express that meaning, must by him have been understood to mean.

The plaintiffs' cause of action then, is not, in my opinion, to be found in this paper, but in the alleged fraud, which when established, deprives the defendant of a right to set up this paper as evidence, to defeat this claim, established by other testimony; and I now proceed to notice the second ground of defence.

On the part of the plaintiffs, it is contended, that even if this note was taken in satisfaction of the claim, yet they may recover the amount of it, in an action for goods sold and delivered, provided, that the proof which they offered, satisfied the jury, that the defendant acted *mala fide,* having at the time of the transfer of this note, to the plaintiffs, knowledge of the insolvency, or failing circumstances of the maker of the note so transferred, and not communicating that knowledge to the plaintiffs.

Whether the defendant acted fraudulently in this transaction, was a question to be decided by the jury, and not by the court. The authorities tell us, what if proved to the satisfaction of the jury, would evidence fraud in the vendee. If, (to give an example,) the vendee purchased the goods, with a preconceived design, of not paying for them, then no property passes to him, and the vendor has a right to treat the contract as a nullity, and the vendee, as a person who acquired the possession of them tortiously. 17 *En. Com. L. Rep.* 330. So if the defendant, by fraud, procured the plaintiff to sell his goods to an insolvent, and then got the goods into his possession, in such a case, the plaintiff is not restrained, by any agreement, to give a credit, from suing for the goods, as for goods sold and delivered to him, who is in possession. See *Hill vs. Perrott*, 3 *Taunton* 274, and in 1st *Stephens Nisi Prius* 285, it is said, that an action lies before the credit has expired, if the time given, was after the sale, and not making any part of the original contract, or if the sale, (purchase,) was not *bona fide.*

In deciding this question, the court is required to assume, that the jury might have inferred from the testimony adduced by the plaintiffs, that the conduct of the defendant, was fraudulent; that at the time of the transfer of this note to the plaintiff, it was, if not quite, almost as valueless as a counterfeit bank note; that the circumstances of the maker, were known to the defendant, and not made known by him, to the plaintiff. If the facts be so, what is to prevent the plaintiffs from recovering?

Even in the case, on which the counsel for the defendant principally relies, (*Fergusson vs. Covington*, 14 *Eng. C. L. Rep.* 307, and 17 *E. C. L. R.* 330,) it is conceded, that before the credit expires, the plaintiff may sue and recover in damages, the value of the goods fraudulently obtained, provided his action be *trover*, and not *assumpsit*, for goods sold and delivered. The ground of this decision, so far as the reporter could inform us, was, that the only contract proved by the plaintiff, was a contract or sale on credit. This shows that the cases

are different. The plaintiffs' proof in this case, intimates nothing about a sale on credit. All that is said in regard to a sale upon credit, came from the defendant.

But it is insisted, that in this case, the law will not *imply* a promise, because there was an express promise. If the plaintiffs then choose to sue, before the expiration of the credit, they must abandon the *assumpsit,* and sue for a *tort.* The amount of the argument is, that if there existed at one time between them, what the parties supposed at that time to be a valid contract, although the law pronounces it to be no contract, there is yet an express contract, which will prevent the law from implying a contract. But this cannot be correct. The plaintiffs make out their case, without relying on the alleged contract. They may offer such proof, as was deemed to be sufficient in the case. In *3rd Taunton,* the fraudulent contract is introduced into the case, and relied on by the defendant. So soon as he attempts to establish it, the plaintiffs prove it to be fraudulent, and insist, that they have a right to treat it as a nullity, and do so treat it. If it be a nullity, how can it be regarded as an express contract, and thereby prevent the law from implying, in favor of the plaintiffs, an *assumpsit* to pay the value of the goods? So soon as the fraud, which vitiates that contract, is established, the case is precisely what it would have been, if there had not been furnished any proof, that such a contract ever was contemplated by the parties, and the case made out, will be, that the defendant got possession of the property of the plaintiffs, and in a way which will authorise them, not only to institute an action for a *tort,* but also upon *assumpsit.* Why not in this case, as well as in the case of *Hill vs. Perrott,* 3 *Taunton* 274, say, that the law will imply a contract, to pay for the goods, from the circumstance of their having been the plaintiffs' property, and having come to the defendants possession, *if unaccounted for?* Can the defendant prevent the plaintiffs from suing upon this implied contract, by setting up an agreement, (to give credit,) which he fraudulently obtained? The answer to this, is to be found in the same case in *Taunton.* The defendant "cannot be permitted to account for the pos-

60  v.2

session, by setting up the fraudulent purchase." And this, because "no man must take advantage of his own fraud."

In 15 *Johnson* 475, the court say, that the special contract, as to the manner of payment being void, on account of the fraud, the plaintiff may disregard it, and bring *assumpsit* for goods sold. The fraudulent misrepresentations, made by the defendant, vitiated the whole contract. In 6 *Johnson* 110, it is stated, that the taking of a note, under a fraudulent misrepresentation, was no payment, and any term of credit, which the taking of the note may have implied, became void. So in 15 *Mass. Reports, p.* 81, *Chief Justice Parker*, in delivering the opinion of the court, said: "The credit was obtained upon an offer of adequate security. The security was wholly worthless. The consideration for the credit therefore failed, and the money thus wrongfully obtained, could not *for an instant*, be conscientiously retained. See also 2 *Johns. Rep.* 455, and the remarks of *C. J. Eyre, in De Symonds vs. Minwicke, 1st Esp.* 430, and those of *Lord Kenyon, in Packford vs. Maxwell,* 6 *D. & E.* 52.

It would seem, that according to a case relied on by the defendant, (in 17 *Eng. Ch. Reports,*) the plaintiff had a right to regard this contract, (as to the time of payment,) as a nullity, and to sue before the expiration of the credit, if he sued for a *tort.* If so, what is there in the case, to prevent them from waiving the *tort,* and suing upon an implied *assumpsit.* This is frequently done. See *Stockett against Watkin's adm.* 2 *G. & J.* 326.

In one of the *English* cases, (4*th East* 147,) in which it was decided, that the plaintiff could not, in that case, (unlike this,) bring an action of *assumpsit,* until the credit expired, although he might sue on the special agreement. *Lord Ellenborough* was reluctant to non-suit the plaintiff, although there was no attempt to prove, that the defendant, in the purchase of the goods, acted *mala fide.* Another judge, (*Le Blanc,*) in his decision, seems to have been influenced by, perhaps, an extravagent fondness for "the forms of action:" "In all cases, *without express authority to the contrary,* it is better

to keep the forms of action as distinct as possible, instead of running one into another." This remark may be entitled to some weight, in any case, to which it can, with truth, be applied. But for the form of action adopted in this case, as a substitute for *trover*, (which all admit, might have been instituted by these plaintiffs, and at the time this suit was brought,) it is believed, there will be found "express authority" in the cases, to which reference has been given. In a case like this, and in which the court, in deciding upon this exception, must assume, that all the justice is on the side of the plaintiff, I do not consider myself at liberty to disregard such decisions, pronounced by such learned judges, because of any thing to be found in the cases cited, and relied on by the counsel for the defendant.

My opinion is, that the judgment of the court below, ought to be reversed.

By the other Judges :

JUDGMENT AFFIRMED, WITHOUT PREJUDICE.