THE SEBASTIAN MAY COMPANY *vs.* WILLIAM C. CODD.

*Sale of Goods—Acceptance of Promissory note—Burden of Proof—Evidence—Fraud.*

The defendant wrote to the plaintiff as follows: "If I would purchase a small stock of your lathes, say to the value of about $800, would you take a four months note in settlement? The note I propose to give you is given by the T. C. K. Co. manufacturers, &c. It is indorsed by the following individuals." The names of the indorsers were then given. Two days after the date of the letter the plaintiff telegraphed the defendant: "We will accept your offer. Send in your order." Accordingly on the next day the defendant sent the note, which was for $945, and ordered a number of lathes, closing his letter with these words: "The balance over the amount you can remit to me as soon as the note is paid." A few days after the plaintiff acknowledged the receipt of the note and order for lathes, and informed the defendant that the note had been placed to his credit. Goods to the amount of $974.83 were subsequently shipped by plaintiff to the defendant and received by the latter. The note was protested for non-payment. In an action of assumpsit on the common counts to recover the value of the goods so sold and delivered, it was HELD:

1st. That the transaction was a sale, the note being taken not as absolute, but only as conditional payment.

2nd. That the plaintiff having proved the sale and delivery of the goods, and the defendant having admitted that they had been delivered to him as charged, but defended on the ground that the note had been accepted in full satisfaction, and put the note in evidence, the burden was on him to prove that the note was taken as absolute payment.

3rd. That an offer of evidence made during the cross-examination of the defendant was properly excluded, because the evidence included in the offer had no relation whatever to anything testified to by the witness in chief.

4th. That, in rebuttal of the defence made that the note, by virtue of the contract had been received by the plaintiff in full satisfac-

tion for the goods, the plaintiff had a right to offer testimony for the purpose of showing that the defendant had actual knowledge of the insolvency of the maker of the note at the time of the transfer thereof, and concealed the fact of such insolvency from the plaintiff.

5th. That the knowledge of the defendant, and its concealment from the plaintiff constituted a fraud under all the circumstances of the case, although he made no false representations as to the solvency of the maker of the note.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First* and *Second Exceptions,* sufficiently stated in the opinion of the Court.

*Third Exception.*—At the trial the plaintiff offered the following prayer:

If the jury shall find from the evidence, that the plaintiff sold and delivered to the defendant the goods and chattels mentioned in the open account filed with the declaration, and at the prices therein charged, and that the only communications between the plaintiff and the defendant, relative to said sale, before the completion thereof, were contained in the correspondence offered in evidence, and shall further find that the defendant has not paid for said goods and chattels otherwise than by the delivery of the promissory note of the Theodore C. Knauff Co., for $945, which was enclosed in his letter of October 24, 1891, to the plaintiff, and was afterwards protested, and has been produced by the plaintiff at the trial, then their verdict must be in favor of the plaintiff for the price of said goods, with interest thereon, *in their discretion* from the date of the maturity of said note.

And the defendant offered the following prayer:

That by a true construction of the documentary evidence in this case the contract between the plaintiff and

Sebastian May Company *vs.* Codd.

defendant therein set out was an exchange of merchandise of the plaintiff with the defendant for the note of the Theodore C. Knauff Co., for $945, and endorsed by Geo. H. Carpenter, Theodore C. Knauff and D. McKnight Hobart, or a purchase of said merchandise from the plaintiff by the defendant with said note, and that if they find the goods sued for in this case are the same referred to in said documentary evidence, and that the said goods were delivered by the plaintiff to the defendant and said note of the Theodore C. Knauff Company was delivered by the defendant to the plaintiff and was not endorsed by the defendant, and that the plaintiff credited said defendant with said note, that then, even though they find that said note was not paid at maturity, there can be no recovery in this case against the defendant, for a sum in excess of $29.87, the amount admitted to be due and owing by the defendant in his affidavit filed with his plea, and interest in the discretion of the jury from the maturity of the note February 22nd, 1892.

The Court (HARLAN, J.,) rejected the prayer of the plaintiff and granted the prayer of the defendant. The plaintiff excepted. The jury rendered a verdict for the plaintiff for $29.83, the difference between the value of the goods and the face value of the note. Judgment of *non pros.* was entered, and the plaintiff appealed.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, McSHERRY, and BRISCOE, J.

*William Reynolds,* (with whom was *Walter I. Dawkins,* on the brief,) for the appellant.

The first two exceptions raise the question, whether, when a vendee offers and his vendor accepts in payment for goods the promissory note not yet due of a third party, whom the vendee knows to be insolvent at the

time, but conceals this knowledge from his vendor, such vendee can afterwards set up the delivery of this worthless note as a valid defence to an action for the price of the goods.

In holding the affirmative the Court below relied upon the statement in the note under Art. 226 of *Benjamin's Chalmers on Bills* (*p.* 228,) that "it is held in a few States that there is no implied warranty of genuineness if the bill is *bona fide sold* as a chattel and not given in payment of a precedent or present indebtedness," as an authority, for which it cites *Fisher vs. Rieman,* 12 *Md.,* 497. But the case at bar being one where the note was given in payment for goods purchased at the time, instead of being sold as merchandise by a bill-broker, as in *Fisher vs. Rieman,* the rule laid down for that case is expressly declared by the Court to be inapplicable to this.

The very next sentence of the note in *Benjamin's Chalmers on Bills* after that upon which the Court relied as an authority for excluding as irrelevant all evidence of the Theo. C. Knauff Co's insolvency at the time the note was transferred, as well as of the defendant's knowledge of its insolvency, is as follows: "By the weight of authority in America the transferer of a note warrants the solvency of the maker at the time of transfer." And in support of this cites the following authorities:— *Ontario Bank vs. Lightbody,* 13 *Wend.,* 101; *Roberts vs. Fisher,* 43 *N. Y.,* 159; *Townsend vs. Bank of Wisc.,* 7 *Wis.,* 185; *Magee vs. Carmack,* 13 *Ills.,* 289; *Westfall, et al. vs. Braley,* 10 *Ohio St.,* 188. To which might have been added:—*Benedict vs. Field,* 16 *N. Y.,* 595; *Bruce vs. Burr,* 5 *Daly,* 511; *Roget vs. Merritt, et al.,* 2 *Caines,* 117; *Weddigen vs. Boston Elastic Fabric Co.,* 100 *Mass.,* 422; *Fleig vs. Sleet,* 43 *Ohio St.,* 53.

It is laid down in Art. 226 of *Benjamin's Chalmers on Bills,* that a transferer by delivery of a bill or note war-

rants to his immediate transferee *that he is not aware of any fact which renders it valueless.* If this is good law then, undoubtedly, all evidence going to show that the Theo. C. Knauff Co. was insolvent at the time of the transfer and Codd knew or had notice of it, was relevant and should have been admitted. In support of the rule laid down in *Chalmers* see the following authorities: *Popley vs. Ashly,* 6 *Modern,* 147; *Fenn vs. Harrison,* 3 *Term Rep.,* 759; *Brown vs. Montgomery,* 20 *N. Y.,* 287; *People's Bank vs. Bogart,* 81 *N. Y.,* 106; *Curtis vs. Brooks,* 37 *Barb.,* 478; *Chitty on Bills,* (9th *Ed.,*) *p.* 247; *Story Prom. Notes, sec.* 118; 1 *Dan. Neg. Inst., sec.* 736; 2 *Randolph Com. Paper, sec.* 751.

The third exception is taken to the rejection of the plaintiff's prayer and the granting of the defendant's prayer, which both went to the question of the burden of proof as to whether in this case the promissory note of the Theo. C. Knauff Co. had been accepted as absolute payment for the goods furnished by the plaintiff to Codd. There having been no previous dealing between the plaintiff and defendant, and the contract having been made wholly by the correspondence which is in evidence, it is for the Court to construe it and determine its effect. *Roberts vs. Bonaparte,* 73 *Md.,* 199.

Had the note in this case been given for a pre-existing debt there can be no question, but that under the decision of this Court in *Glenn vs. Smith,* 2 *G. & J.,* 509, the defendant has not discharged the burden of proof imposed upon him to show an express agreement by the plaintiff to receive the note absolutely as payment and to run the risk of its being paid.

The only question therefore, which can arise under this exception is whether the mere fact that the note was given for goods purchased at the time, has the effect of shifting from the defendant to the plaintiff the burden of proof as to whether the note was accepted as absolute

Sebastian May Company *vs.* Codd.

or only conditional payment. It is true, as is stated in 3 *Randolph on Commercial Paper, sec.* 1543, that a *fine distinction* between a note given for a pre-existing debt and one given for goods purchased at the time, has been attempted to be drawn in some of the States, but it is confidently submitted that this distinction has never been recognized in Maryland.

The recent case of *Susquehanna Fertilizer Co. vs. White & Co.,* 66 *Md.,* 444, is directly in point. See also the following other Maryland cases in which the notes attempted to be set up in payment were all given for an indebtedness contracted at the time. *Deford vs. Dryden,* 46 *Md.,* 249, 255; *Folk & Smith vs. Wilson,* 21 *Md.,* 538, 551; *Crawford vs. Berry,* 6 *G. & J.,* 69, 72; *Patapsco Insurance Co. vs. Smith,* 6 *H. & J.,* 170.

See also the following authorities outside the State of Maryland upon the same point. *Chitty on Bills, p.* 244, cited in *Story on Prom. Notes, sec.,* 117 *note, Porter vs. Talcott,* 1 *Cowan,* 383; *Darnell vs. Morehouse,* 36 *How. Prac. Rep.,* 520; *Monroe vs. Hoff,* 5 *Denio,* 360; *Appleton vs. Kennon,* 19 *Mo.,* 640; *Alcock vs. Hopkins,* 6 *Cush.,* 484.

But entirely irrespective of the legal presumption which arises as to the nature of the payment whether absolute or conditional when nothing is said upon the subject at the time, the fact that in this case the defendant writes in his letter to the plaintiff, enclosing the note which was for a larger sum than he then supposed the price of the goods he was ordering would amount to, *"the balance over the amount you can remit to me as soon as the note is paid,"* is conclusive evidence that he did *not* regard this delivery of the note as an absolute barter of it for the goods, but rather in the nature of a collateral security to be held by the plaintiff until maturity and then collected, and so much of the proceeds as might be necessary, to be then applied to the payment for the goods. For it will be noticed that up to this time it

had not been determined exactly how many or what kind of goods he was to order or at what prices they were to be charged.

As to effect of "placing note to credit" of appellee, see *Glenn vs. Smith,* 2 *G. & J.,* 509; *Brigham vs. Lally,* 130 *Mass.,* 485.


*Frederick C. Cook,* for the appellee.

It is conceded that giving the note of the debtor or of a third party for a *pre-existing debt* does not extinguish *the original debt* for which it is taken, unless it was received as payment or satisfaction. And that to give its acceptance the effect of absolute payment, "a contract that it should be so, must be shown, an express agreement to receive it as payment and run the risk of its being paid."

But it must not be forgotten that the *contract or express agreement* spoken of in the authorities need not "be expresed in terms, it may be established by the facts and circumstances attending the transaction, which, taken in connection with the language of the parties, justify the inference that such was the agreement and intention of the parties." *Haines vs. Pearce,* 41 *Md.,* 231; *Deford vs. Dryden,* 46 *Md.,* 256.

Throughout all the cases on this subject of payment by note, the existence of *the relation of creditor and debtor* is assumed, and if the transaction does not in fact create this relation, no matter what terms or words may be employed in expressing the contract, the cases cease to be applicable, nor can the relation of creditor and debtor be inferred only from the fact that goods were shipped and delivered upon the receipt of the unendorsed note of a third party. *Susquehanna, &c., Co. vs. White,* 66 *Md.,* 444, 449, 457-8.

The question whether the transaction was intended as a sale or an exchange would ordinarily be submitted to

the finding of the jury.    *Crawford vs. Berry*, 6 *G. & J.*, 71 *and* 72; *Deford vs. Dryden, et al.*, 46 *Md.*, 248; *Susquehanna, &c., Co. vs. White*, 66 *Md.*, 444.

But in this case where everything is in writing, the construction of which is for the Courts, there was nothing left for the jury to find concerning *the terms of the contract.*

When an unendorsed note is transferred by delivery alone, the transferrer is not liable on the consideration in respect of which he has transferred the bill, if it be dishonored, except where it was given in respect of an antecedent debt, or when it appears that the transfer was not intended to operate in full and complete discharge of the consideration in respect of which it was transferred.    *Chalmers on Bills and Notes*, (*2nd Am. Ed.*) 226–7; *Chalmers on Bills and Notes*, (*5th Eng. Ed.*) *sec.* 58; *Fisher vs. Rieman*, 12 *Md.*, 497.

The fact of the unendorsed note of a third person being placed to the credit of the consignee of the goods, sued for, and the balance receipted for as paid in cash, has been deemed sufficient to take a case without the operation of the rule affirmed in *Glenn vs. Smith*, 2 *G. & J.*, 494, even in a case of sale.    *Phelan vs. Crosby*, 2 *Gill*, 470–1; *Susquehanna, &c., Co. vs. White*, 66 *Md.*, 459; *Breed vs. Cook & Cadwell*, 15 *Johnson*, 241.

And in the circumstances of this case, where the note was accepted *in settlement*, as contradistinguished from *payment*, assuming for the sake of argument and only *pro hac vice*, that the facts show a sale, what should be the rule?    Settlement and payment do not mean the same thing.    *Berry vs. Griffin*, 10 *Md.*, 30 *and* 32.

The word settlement, as used in this case, means in full and final adjustment, and extinguishment of the claim.    *Rex vs. Martin*, 7 *Carr. & P.*, 549; *Applegate vs. Baxley*, 93 *Ind.*, 149; *Evans' Practice*, 316.

And inasmuch as the plaintiff's prayer submits the meaning of the written evidence to the finding of the

jury, it was properly rejected, and defendant's prayer construing the same was properly granted.

There is no evidence in the record to bring this case within the exception that allows the fraudulent representations or conduct of a party transferring a note unendorsed by him in satisfaction for goods delivered to him contemporaneously with the transfer, to have the effect of enabling the party defrauded to hold him for the goods. *Hoopes vs. Strasburger*, 37 *Md.*, 391; *Blair vs. Blair*, 39 *Md.*, 572.

No representations were made except those contained in the correspondence, and the whole object of the evidence in the first and second exceptions offered, was to prove *the insolvency in fact* of the maker of the note received by the plaintiff, and that *the defendant knew of this insolvency* before the delivery of the goods, and before the correspondence with the appellant. In neither aspect of the offer was the evidence admissible. The question of the maker's insolvency had nothing to do with the transaction, neither did the fact of the knowledge of the defendant; the only pertinent inquiry would have been the fraudulent misrepresentations of the defendant inducing the contract. *Hoopes vs. Strasburger*, 37 *Md.*, 403; *Susquehanna, &c., Co. vs. White*, 66 *Md.*, 444, 450, 457.

As to the question of time to which this knowledge of the insolvency and actual insolvency is referred, it may be said that if it is the time of delivery of the goods as in the first exception stated, it surely could not affect the defendant who had previously thereto executed his part of the contract by the delivery of the note; and if the time be fixed as antedating the correspondence, this offer is objectionable as it is upon rebuttal, and is in contradiction of nothing brought out by the defendant in his testimony, which was limited solely *to proving the letters, and that there was no other communication*

*had between himself and the plaintiff*—all the other matters being brought out on cross-examination, and by which he ought to be bound, it being entirely new matter.

FOWLER, J., delivered the opinion of the Court.

This controversy grows out of a transaction which took place in October, 1891, between the appellant company doing business in Ohio, and the appellee who resides in this State.

On the twenty-first of October the appellée, who was defendant below, wrote from Baltimore to the appellant the following letter: "If I would purchase a small stock of your lathes, say to the value of about $800 would you take a four months' note in settlement. The note I propose to give you is given by the Theo. C. Knauff Company, manufacturers of church organs, 238 Dean St., Philadelphia; factory is at Newark, Delaware. It is endorsed by the following individuals." The names of the endorsers are then given, and, promising to enclose the note in a subsequent letter, the appellee requests an answer by telegraph. Two days after the date of the foregoing letter the appellant telegraphed the appellee: "We will accept your offer, send in your order."

Accordingly on the next day, the appellee wrote the appellant enclosing the note above mentioned, and ordered a number of lathes—closing his letter with these words: "The balance over the amount you can remit to me as soon as the note is paid." A few days after—on the 26th October, the appellant acknowledged receipt of the note and order for lathes, and informed the appellee the note had been placed to his credit.

Goods to the amount of $974.83 were subsequently shipped by the appellant to the appellee, and received by the latter in Baltimore. The note was protested for non-payment, and the appellant brought an action of

Sebastian May Company *vs.* Codd.

*assumpsit* against the appellee on the common counts to recover the value of the goods so sold and delivered.

There was a verdict for the plaintiff for $29.83—the difference between the value of the goods and the face value of the note. Judgment of *non pros.* was entered, and the plaintiff appealed.

During the course of the trial below three exceptions were taken to the rulings of the Court, one upon the rulings on the prayers, and two in reference to the rulings on the testimony.

It was very earnestly contended on the part of the appellee, and the Court below so held, that the transaction or contract between the parties to this suit, the entire evidence of which, so far as now disclosed, is in writing, and is contained in the letters which passed between them, was an exchange or barter of the goods of the appellant for the note of a third party passed by delivery merely, and without endorsement, and that therefore the appellant assumed all risk of non-payment of the note. On the contrary the contention of the appellant is that by the true construction of the contract, the transaction is a sale, and the note was taken not as absolute, but only as conditional payment.

What is the rule of law regulating the rights and liabilities of parties in the case of an exchange or barter of goods for the note of a third party we need not now consider, for we have concluded that the contract in this case is one of sale.

The negotiation was commenced by the appellee who in his letter of October 21st, said: "If I would *purchase* a small stock of your lathes * * * would you take a four months note in settlement?" It seems to us that the plain import of this language indicates that it was the desire and intention of the appellee to *buy* the goods in contradistinction to giving something in exchange for them—for otherwise why use the word *purchase?* If he

intended to make an exchange he should have said so. But when we look at the concluding sentence of appellee's letter of the 24th October, in which the note was transmitted, it appears to us there can be no doubt what was the appellee's understanding at that time. He said, "the balance over the amount you can remit to me as soon as the note is paid." It will be remembered that at that time it was not known to either party exactly how many or what kind of lathes would be ordered, or what the prices for the same would be. The appellee had limited his order to "about the value of $800," and therefore when he sent the note for $945.00 and asked for the difference to be remitted to him when the note is paid, he could not have understood he was parting with the note in exchange for the goods. This certainly has not the appearance of an exchange, but on the contrary would indicate what we have already said, that the transaction we are considering was a sale.

Was the note given and received in full payment?

As the case now stands the answer to this question must be found in the same written evidence which establishes the contract, for there is no other proof on the subject before us. If nothing appeared or could be ascertained from the contract except that the note in question was received in payment for the goods, it might well be conclusively presumed that such was the intention of the parties to the contract. *Tobey vs. Barber*, 2 *American Leading Cases*, 299; *Noel vs. Murray*, 1 *Duer*, 385; 18 *Am. and Eng. Ency. of Law*, 182.

But here we have a different case presented. It appears that the appellant was to keep the note until maturity, then collect the proceeds thereof, and having paid itself for the goods, the balance was to be remitted to the appellee. This part of the transaction, it seems to us, is very significant, and would seem to be a conclusive indication that the note was not intended to be

at the risk of the appellant.     For, according to all authority, and reason as well, if the vendor takes the note as absolute payment, it is his property, and he may dispose of it as he would any other property owned by him. But here it appears that, so far from accepting the note absolutely, the agreement was that the appellant was to collect the proceeds, retain a portion thereof, and the balance was to be the property of the appellee.

But it was also urged that the note was offered and accepted "in settlement" for the goods purchased by the appellee, and that it was placed to his credit by the appellant.     But we do not think that the use of the word "settlement," nor the fact of the credit are together sufficient to overcome the force of the fact on which we have based the inference already drawn.     It will be noticed that the note was not given or received *in payment*, but the appellee offers it *in settlement*, and the offer is accepted in general terms, without saying whether it is accepted in payment or in settlement.     But assuming that the note was accepted as offered, that is, "in settlement," the use of this term in lieu of "payment" may be considered as another indication of the intention of the parties, especially in view of the arrangement we have already mentioned, that the appellant was to retain only a part, and remit the balance of the proceeds of the note to the appellee.     Nor do we think that the fact of crediting the amount of the note to the account of the appellee can have any controlling effect under the circumstances of this case.

The case of *Phelan vs. Crosby*, 2 *Gill*, 470, was cited to show that when an unendorsed note of a third person is placed to the credit of the consignee of the goods sued for, and the balance receipted for as paid in cash, the note must be considered as having been taken in payment in the same sense that the cash was payment. There is no cash payment in the case before us, and of

course there can be no argument based upon the combined effect of the cash payment and the credit of the note. The language quoted to support the view of the appellee is not that of the Court of Appeals, but will be found in the dissenting opinion of the late Judge MAGRUDER, who thought the judgment in that case should be reversed; but the majority of the Court, while filing no opinion, affirmed the judgment, and therefore held in accordance with the ruling of the trial Court, in granting the defendant's first prayer, that there must be evidence that the note was received in payment *and* without the right of recourse to the defendant. However, without regard to what was said in *Phelan and Crosby* as to the effect of giving credit in that case, we do not think the fact of crediting the note here, whether considered alone, or in connection with the other evidence of the contract, is conclusive proof that the note was taken as absolute payment.

Of course it will not be contended that whenever a merchant credits his debtor's account with the amount of a note, that thereupon the debt is paid. Such a construction of a very common entry in book-keeping would be novel, and would often result in supplying debtors with an easy as well as "a new way to pay old debts."

There being nothing, therefore, in the written evidence of the contract to prove that the note was to be taken and was taken as absolute payment, on whom does the burden rest to show that fact, if it be a fact? The transaction in this case was, as we have said, a sale, and not an exchange. The appellant sued in *assumpsit* on the common counts for goods sold and delivered, and having proved its case, it was admitted by the defendant that the goods had been delivered to him as charged— his defence being that the note in question for $945 had been accepted in full satisfaction. This note was produced by the appellant and put in evidence by the appel-

Sebastian May Company *vs.* Codd.

lee. Under these circumstances, the appellee setting up as a defence this alleged agreement as to the note, it would seem clear that the *onus* is upon him to prove it. But the only proof on this point offered by the appellee was the contract itself or the written evidence thereof, which does not, as we have said, establish his contention on this point. And although there is some conflict of authority as to where the *onus probandi* rests in a case like this, (*Tobey vs. Barber*, 2 *Am. Lead. Cases*, 299 ; *Noel vs. Murray*, 1 *Duer*, 385,) yet in Maryland there is no doubt as to the rule. In the case of *Susquehanna Fertilizer Company vs. White & Company*, 66 *Md.*, 457, in which the defendant set up the same defence here relied on, it was held that the burden was upon him. It follows, therefore, that the prayer of the appellee which placed the burden upon the plaintiff should have been refused, and that of the appellant, so far as it related to this question, was correct, and should have been granted, for it placed the burden on the defendant.

As this case will have to be remanded by reason of the error already pointed out, it will be necessary for us to pass upon the questions presented by the other two exceptions—relating to the admissibility of testimony. It will be unnecessary to consider the first exception, because substantially the same evidence was offered and excluded under the second exception. There is a material difference, however, in the two offers, the first having been made during the cross-examination of the defendant, and properly excluded because the evidence included in the offer had no relation whatever to anything testified to by the witness-in-chief, while the second was an offer of testimony in rebuttal, and for the purpose of showing that the appellee had actual knowledge of the insolvency of the maker of the note at the time of the transfer thereof, and that he concealed the fact of such insolvency from the appellant. We think

it very clear that if the testimony is admissible for any purpose, it was properly offered in rebuttal. The appellant fully proved his case below by proving the sale and delivery, and the defence was payment, the evidence of which was the promissory note in question, which note, it was claimed, by virtue of the contract, had been received by the appellant in full satisfaction for the goods. In order to rebut this defence, the appellant offered the testimony referred to in order to show that, even assuming he had agreed to accept the note in payment, he was induced to do so by the fraud of the appellee. It must be conceded that the testimony offered tends to prove the fact it was offered to prove, and the question then is whether the knowledge of the appellee and its concealment from the appellant constitute a fraud, under all the circumstances of this case.

While the appellee admits that he would be guilty of the charge of fraud if he had made any false representations as to the solvency of the maker of the note, yet he contends, in effect, that having remained silent, and having thereby concealed the insolvency, nothing wrong morally, certainly no fraud that will be regarded in a Court of law, can be imputed to him. But we do not think such a position is consistent either with good morals or good law. No doubt some authority can be found to sustain the view of the appellee as to the legal proposition, (*Bartle, et al. vs. Saunders*, 2 *Grant's Cases*, 199; *Smith vs. Smith, Murphy & Co.*, 21 *Pa. St. Rep.*, 367); but we cannot give them our approval.

In 2 *Am. Lead. Cases*, (*Tobey vs. Barber*, 299,) the annotators say: "It will make no difference in point of principle that the maker of the note was insolvent at the time, *if there is no fraud or undue concealment on the part of the purchaser.*" And this is the general principle, stated in many different ways, which will be found in all the authorities. It is recognized in Maryland in the case before cited, *Phelan vs. Crosby.*

Sebastian May Company *vs.* Codd.

In support of the rule as laid down in 2 *Am. Lead. Cases*, the leading case, *Bicknall & Skinner vs. Waterman*, 5 *R. I.*, 43, and *Byles on Bills* are cited. In the case just mentioned it is said that "the well-known common law principle applicable alike to sales and exchanges of personal things, is that fraud or warranty is necessary to render the vendor or exchanger liable in any form, for a defect in the quality of the thing sold or exchanged. Applying this principle to the sale or exchange of a note of a third person, transferred by endorsement without recourse, or by delivery merely, the vendee or person taking it * * takes the risk of the past or future insolvency of the maker * * *; unless, indeed, in case of past insolvency the vendor or exchanger is guilty of *the fraud* of passing it off with knowledge of that fact." And we assume that such conduct would be none the less a fraud, because the note happened to be passed in payment of merchandise then purchased.

In *Byles on Bills*, page 257, it is said: "But in *all cases* if notes or bills are transferred as valid when the transferer knows they are good for nothing, the suppression of the truth is a fraud, and he is liable."

"If," says Justice BAYLEY, in the case of *Camidge vs. Allenby*, 6 *Barn. & Cress.*, 382, "he could show fraud, or knowledge of the maker's insolvency in the payer, then it would be wholly immaterial whether the notes were taken at the time of sale or afterwards."

And in *Popley vs. Ashly*, 6 *Mod.*, 147, Lord HOLT uses this language: "If a man give a note upon a third person in payment, and the other takes it absolutely as payment, yet if the party giving it knew the third person to be breaking or in a failing condition, and the receiver of the note uses all reasonable diligence to get payment, but cannot, this is a fraud, and therefore no payment; and here was no *laches* in the plaintiff; for the party failed

before the money was payable.'' And this seems to be precisely the state of facts offered to be proved in this case.

The case of *Brown vs. Montgomery,* 20 *N. Y.,* 287, was the case of the sale of commercial paper; but the principle there involved applies also to the case before us. In that case the Court says: ''The case is as though, after hearing of the failure of the maker of the notes, they took the paper * * * * into the street, and sold it to parties who had not heard of that event.'' ''Such an act,'' says the Court, ''could not be justified at law any more than in the forum of conscience.''

And the same principle is recognized in *Fisher vs. Rieman, et al.,* 12 *Md.,* 497, where it was held that where a promissory note is *bona fide* sold by a public bill broker by delivery merely * * * without any express warranty or representation and not for an existing debt or one created at the time, there was no implied warranty even of the genuineness of the note. But the Court is careful in quoting authorities to sustain this position as applicable even to that case, that it must be assumed that the assignor was not guilty of *any fraud* in the transaction, and in connection with this necessary assumption it is stated as a fact that the assignor was ignorant of the defect in the note. Of course, if he had known of the forgery of the note, the conclusion in *Fisher and Rieman, et al.,* and *Brown and Montgomery* would have been identical,—that the assignor was guilty of fraud.

We refer to these authorities to show, that the facts offered to be proved in this case have been generally held to constitute fraud, whether the transaction be a sale or exchange of the note of a third person without recourse, or the transfer of the note itself in payment of a debt. But, independent of authority, we think there is no difficulty in reaching the same con-

clusion in this case, which, as we have said, is the sale of goods for the note of a third party.

Where both parties are ignorant of the insolvency, other and different questions arise, with which we are not now concerned.

Our conclusion, therefore, is that the prayer offered by the plaintiff should have been granted, and the testimony offered by him should have been admitted.

*Judgment reversed, and*
*cause remanded.*