### GILLETT v. KNOWLES.[1]

1. VENDOR AND VENDEE — AGREEMENT TO PAY DEFICIENCY IN VALUE OF LAND CONVEYED—STATUTE OF FRAUDS—EVIDENCE.
    Parol evidence of an agreement to make good any deficiency in the value of land agreed to be given in part payment for other land is admissible, where the deed to the latter land, having been delivered to a third person to be held until a written agreement to make good such deficiency should be executed, was fraudulently obtained by the grantee therein before the execution and delivery of such agreement, and the transaction was thereupon repudiated by the grantor.

2. CONTRACT—FRAUD—RESCISSION—SURRENDER OF SECURITIES.
    One who has been induced by fraud to accept a note and mortgage in payment of a debt may maintain an action to recover the debt without returning such securities, where the mortgage is worthless because of the foreclosure of a prior mortgage covering the same property, and the mortgagor is insolvent and without the State.

Error to Hillsdale; Lane, J. Submitted March 3, 1896. Decided March 11, 1896.

*Assumpsit* by Joel H. Gillett and wife against Ezra S.

---

[1] Rehearing denied July 8, 1896.

Knowles for a balance due upon a sale of lands.   From a judgment for plaintiffs, defendant brings error.   Affirmed.

*F. A. Lyon* (*Watts, Bean & Smith,* of counsel), for appellant.

*J. R. Sutton, E. J. March, George A. Knickerbocker,* and *F. H. Stone,* for appellees.

MOORE, J.   The first count of the declaration filed in this case is in *assumpsit,* to recover an alleged unpaid portion of the purchase price of certain real estate sold by the plaintiffs to the defendant.   The second count is also in *assumpsit,* and describes the manner in which the consideration for said real estate should be paid, as follows:

"A mortgage of $1,300 then upon said land, and the sum of $400 at the date of said conveyance, and the conveyance by said defendant to said plaintiffs of a certain parcel of land situate in the county of Mason, State of Michigan, containing 40 acres, for the sum of $500, provided said last-mentioned land was worth that sum, and the said defendant promised and agreed that, if the said last-mentioned land should not be worth $500, the said defendant would make that amount good to said plaintiffs, and pay them the difference between the value of the land and the said $500, and the balance in equal annual payments of $100, with interest at 7 per cent. * * * And the said plaintiffs aver that the said land, situated in Mason county, was not worth the sum of $500, but was worth a much less sum, to wit, the sum of $50. And the said defendant has hitherto altogether refused, and still does refuse, to pay to said plaintiffs the difference between $50, the real value of said land, and the sum of $500, the alleged value of said land as above stated, and has refused, and still does refuse, to pay the said sum of money in this count mentioned, or any part thereof, to said plaintiffs."

The common counts were added.

Plaintiffs' bill of particulars is as follows:   October, 1886, for unpaid price of land sold and conveyed by said plaintiffs to said defendant, $2,000; October, 1886, for balance due to plaintiffs for land sold and conveyed to de-

fendant, $1,700. The plea of the defendant was that of the general issue, with notice that the statute of limitations had run. The case was tried by a jury, who rendered a verdict for $1,534.85 in favor of the plaintiffs. Defendant appeals.

The record discloses that in 1886 the plaintiffs, who were old and ignorant people, sold a farm in Jackson county to defendant for $3,000, defendant to pay an incumbrance upon it of $1,300, and to pay $400 down, and the balance in yearly payments of $100, with interest at 7 per cent. After the sale was agreed upon, the defendant proposed to deed to plaintiffs, as a part of the consideration for the farm, a piece of land in Mason county, which neither of them had seen, which defendant represented as worth $500, and, if the land was not worth the $500, he would pay to the plaintiffs the difference between its real value and $500, and the balance should be paid $100 yearly, with interest at 7 per cent. In the afternoon they all went to the office of Justice Riggs, where a deed was executed by the plaintiffs to the defendant of the Jackson county farm. Knowles did not have a description of the Mason county land with him, but it was agreed that he would leave a description with Riggs, so that plaintiff Joel H. Gillett could go and look at the lands; that Knowles was to pay half of his expenses; and that, if the lands were not worth $500, he would make up the deficiency as stated. The deed from the Gilletts to Knowles was to be left with Justice Riggs, not to be delivered until Knowles left a paper agreeing to make good any deficiency in the value of the Mason county lands if they were not worth $500, and a warranty deed of them. Knowles paid $200 down, and afterwards, in the absence of Justice Riggs, left with his wife what purported to be a deed of the Mason county lands, but which contained only a warranty against all lawful claims whatever since the party of the first part came into possession, but did not leave the paper agreeing to make good the deficiency, if there was any, and took away the deed from the Gilletts to him. Gillett afterwards went to look at the Mason county land, and found it nearly, if not quite, a worthless

pine barren.   On his way home, he found Knowles taking possession of the Jackson county farm, and claims he forbade his doing so; that Knowles told him if he would let him in possession, and would come down to his place, he would fix it up all right.   He let Knowles into possession, and afterwards went to Knowles', and threw out to Knowles the deed of the Mason county lands and a slip with the memorandum of his expenses in going to see them, and told him how worthless the lands were.   He was informed by Knowles that he would have nothing to do with the northern lands, and Knowles went off, and left Gillett, who then picked up the papers, thinking they would aid him in bringing about a settlement.   Instead of giving his note for the balance of the payments he was to make, Knowles first persuaded Gillett to take what was known as the "Fuller Note," and then arranged to withdraw the Fuller note as a payment, and to turn out to him, instead of Knowles' own notes, an interest, amounting to $956, in a note and mortgage given by one Blanchard, upon which the payments became due, $100 yearly, with interest at 7 per cent.   Knowles represented to Gillett that this was a first mortgage, and was first-class, and that Knowles' object in asking Gillett to take this mortgage and note was to save the necessity of giving his own obligation.   The mortgage was never assigned to Gillett, though the note, which was payable to bearer, was delivered to him, and was in his possession when the suit was brought.   This mortgage was a second mortgage.   The prior mortgage was foreclosed in 1888, and, in answer to a special interrogatory, the jury found that the land described in this mortgage was not worth any more than the first mortgage at the time that Gillett got such interest as he obtained in the Blanchard mortgage.   Defendant, in addition to the $200 first paid, made payments amounting to $115.   Defendant claimed these payments were made on the Blanchard mortgage.   Plaintiff denied that he had ever received a dollar on the Blanchard mortgage, and the jury evidently found with

him.   Col. March gave evidence tending to show that Blanchard was entirely irresponsible.   It is a somewhat significant fact that Knowles, though present throughout the trial, was not called as a witness.

It is claimed by defendant that there was not as much due at the time verdict was rendered, in any possible view of the case, as the amount of the verdict.   We think this is not true if the jury adopted the plaintiffs' theory of the case, which they evidently did.

The admission of any testimony as to the agreement of defendant to make good any deficiency in the value of the Mason county lands is assigned as error, because not in writing, and within the statute of frauds.   In support of this contention, the case of *Warnes* v. *Brubaker*, 107 Mich. 440, is cited.   We do not think that case governs this.   There the negotiations to trade were finally reduced to writing, which was accepted by the parties.   Here one of the parties obtained by misrepresentation the delivery of a deed to him, without leaving at the same time an indemnity paper and a warranty deed, as he had agreed to do; and, when Gillett found what had been done, he repudiated the Mason county deed, and attempted to return it to Knowles.   Suppose Knowles had agreed to leave with Justice Riggs $1,000 in money before the Gillett deed was delivered to him, and, representing to Mrs. Riggs that an envelope left with her contained a check for that amount to Mr. Gillett, had succeeded in getting the deed, when in fact the envelope contained nothing; would it be claimed that Mr. Gillett could not sue for the $1,000?   We do not think this position is well taken.

It is claimed that there could be no recovery of any portion of the amount represented by the Blanchard note and mortgage, because the Blanchard note had not been returned when suit was brought.   This view is sustained by *Coolidge* v. *Brigham*, 1 Metc. (Mass.) 547; *Estabrook* v. *Swett*, 116 Mass. 303.   In *Dayton* v. *Monroe*, 47 Mich. 194, Justice CAMPBELL held:

"We ao not understand that there is any rule requiring a defrauded party to give up the personal unsecured obligation of those who defraud him, as a condition of suit for the fraud. It is one of the documents which may be necessary, as it was here, to prove the false representations, which were indorsed on the note itself. By surrendering this, plaintiff would have lost the most important item of proof which he possessed."

This case was followed in *Stubly* v. *Beachboard,* 68 Mich. 414. The authorities are all agreed that, if the note is worthless, it need not be returned before suit is brought. See *Estabrook* v. *Swett, supra.*

The security evidenced by the Blanchard mortgage, given to secure this note, had been cut off by the foreclosure of a prior mortgage. Five annual payments on the note were past due, and no payments were made on it. Evidence was given tending to show that Blanchard was insolvent, and had left the State. The learned trial judge instructed the jury that, unless they found the Blanchard note and mortgage were both worthless, then there could be no recovery as to them. In view of this charge, the jury must have found the note and mortgage were both worthless in order to render the verdict they did. The record does not disclose any material error.

The judgment is affirmed, with costs.

The other Justices concurred.