J. D. DILLE, Appellee, v. J. H. WHITE, Appellant.

Loans: ACCEPTANCE OF BANK CHECK OR DRAFT: RISK OF PAYMENT:
1 INTENT. One borrowing money and accepting therefor bank checks or drafts, not as the money itself, but as a convenient means of obtaining the money, does not assume the risk of failure of the bank upon which they are drawn, but the rule is otherwise when the purchase of the paper itself is the sub-

ject of the transaction; and the question of whether the acceptance is absolute or conditional upon its payment when presented is to be determined from the express or implied agreement of the parties.

**Same:** EQUITABLE RELIEF. Where a borrower gave his note and mortgage and accepted in lieu of the money a cashier's check, both parties believing the same to be of value, but the bank was in fact insolvent so that upon its immediate presentation payment would have been refused, equity will restore the parties to their original situation, even though the borrower accepted the check unconditionally.

**Cancellation of instruments:** FAILURE OF CONSIDERATION: TENDER. The fact that a borrower having accepted from the lender a worthless cashier's check, in lieu of the money, exchanged it with the cashier for an equally worthless bank draft did not deprive him of the right to a cancellation of the note and mortgage given to secure the loan, or a judgment against the lender; nor was a return or tender of the check essential to his right to maintain the action.

**Same:** NATURE OF ACTION: STATUTORY REGULATION. An action for the cancellation of a note based on the fact that a worthless cashier's check was received therefor is not an action for breach of warranty in the negotiation of checks, and therefore not governed by the negotiable instrument statute.
DEEMER and McCLAIN, J. J., dissent.

*Appeal from Ringgold District Court.*— HON. H. M. TOWNER, Judge.

TUESDAY, NOVEMBER 20, 1906.

THE opinion states the case.   Judgment *affirmed.*

*Miles & Steele* and *S. W. Steele,* for appellant.

*Spence & Smith* and *Fuller & Fuller,* for appellee.

WEAVER, J.— The petition alleges that on or about January 14, 1904, the defendant undertook to make a loan to plaintiff of $4,400, the repayment of which was to be secured by mortgage upon certain real estate in Ringgold county; that, in pursuance of such agreement, plaintiff did

make and deliver to defendant his promissory note and mortgage for said amount, but that no part of said loan has ever in fact been received by the plaintiff, and the defendant refuses to pay or furnish the same to the plaintiff, and refuses to return the said note or to cancel and discharge the mortgage.  Upon these allegations, plaintiff demands judgment against the defendant in the sum of $4,400, and interest from the date of the delivery of the note and mortgage, or that said securities be canceled and discharged.  Answering this claim, the defendant admits the agreement to make the loan, as alleged in the petition, and alleges that, in pursuance of such agreement, he delivered to plaintiff " cashier's checks " upon the Citizens' Bank of Mt. Ayr, Iowa, to the amount of $4,-400, which plaintiff accepted in lieu of cash, and as full and complete performance and satisfaction of defendant's undertaking in respect to said loan.  He further alleges that the checks so delivered were, by the said bank, paid to plaintiff by the issuance to him, at his request, of a draft on the Stockyards Bank of St. Joseph, Mo., for an equal amount, and the checks were thereupon marked " paid and canceled." In reply, the plaintiff admits the delivery to him by defendant of the two cashier's checks mentioned, but denies that they were delivered or accepted as a performance of the defendant's agreement to make the loan, or as a payment of the said sum of $4,400, but simply as a convenient method or medium by which the actual cash was to be transferred to plaintiff, from the defendant.  He further says:  That in fact defendant delivered the checks with the representation and upon the understanding that they were drafts of the kind usually issued by banks for the remittance or transfer of money, and that plaintiff, being unacquainted with the forms of such transactions, did not know the real character of the instruments until later on the same day, upon attempting to make use of them, he found that instead of drafts they were simply checks drawn upon the Citizens' Bank by its own cashier, whereupon he went to said bank, and, at his request,

the cashier took up said checks and issued to him in place thereof the draft upon the Stockyards Bank mentioned in the answer; that in fact at the time of the transaction with the defendant, and at all times thereafter, the said Citizens' Bank was insolvent; that it had no money with which to pay said checks, nor any in the Stockyards Bank with which to meet said draft, and closed its doors on the morning of the following day; that no part of the checks or draft has been paid, and they are and at all times have been worthless and uncollectible. The plaintiff also tenders a return of the checks to the defendant. The district court found for the plaintiff for the sum of $4,400 and interest, but provided that a surrender of the plaintiff's note and mortgage duly canceled if defendant should elect to do so, should operate as a satisfaction of the judgment. The defendant appeals.

From the foregoing statement it is readily apparent that the one question to be determined in this controversy is whether the delivery of the so-called " cashier's checks " by the appellant, and their receipt by the appellee, are to be treated as constituting a payment to the latter of the money which the former undertook to loan him; and hence upon which party the loss occasioned by the insolvency of the bank must fall. The testimony tends fairly to show the following state of facts: Early in January, 1904, the plaintiff, a farmer living near Mt. Ayr, was negotiating for the purchase of a tract of land, and, for this purpose, he desired to borrow $4,400. He went to appellant to procure a loan of the sum, and explained to him the purpose to which the money was to be applied. Appellant expressed his willingness to lend the money upon proper security. On January 14, 1904, the negotiations appear to have culminated, and the parties, having first met at the home of the appellant, started together to go to the office of the notary, who was to prepare the papers. On the way appellant asked appellee whether he would take the amount of the loan " in check or draft." The parties are not quite agreed in their testimony

as to the exact language used.    Appellee says Dr. White used the words above quoted, while the latter says he used the words " money, check, or draft."    They agree, however, that appellee replied in substance that he would take it in two drafts; one for $1,000, and the other for $3,400.    At this stage of the conversation the parties were near the office of the Citizens' Bank, where appellant had the money on deposit, and appellant went in and procured the two instruments which have already been mentioned as cashier's checks. From this place they proceeded to the notary's office where it was discovered that a defect existed in appellee's title to some of the land to be included in the mortgage, and the consummation of the loan was postponed until the following day to give appellee time to procure a deed which was needed to cure the defect.    Pending the production of this deed, the note and mortgage which had been executed by the appellee, and the two instruments which appellant had brought from the bank, were, by mutual agreement, left in the notary's possession, with the understanding that, if the appellee succeeded in perfecting his title to the mortgaged property, the deal was to be consummated and the papers delivered.    Appellee returned to town with the required deed on January 15, 1904, and the notary delivered to him the cashier's checks. Appellee took them at once to the agent through whom he was making the land purchase, and this agent, discovering the true character of the checks, advised that they be exchanged for drafts.    Thereupon appellee went to the bank, returned the checks, and took in place thereof the draft on the Stockyards Bank of St. Joseph, Mo.    By this time it was too late in the afternoon for appellee to close the purchase of the land.    After closing its doors on that day, January 15th, the bank never reopened for business.    Its insolvency was publicly announced on the following morning.

It should be noticed in this connection that appellant, as a witness, testifies that when he spoke to the appellee concerning a check as a medium for delivery of the money loaned

he meant his own personal check upon the bank, and that by draft he meant the ordinary draft or bill of exchange drawn by a bank upon its correspondent, and, even in the absence of this admission, it would probably be presumed that such was the intention of the parties. He further admits that when he went to the bank he asked the cashier for " drafts " and took the instruments given him without special examination, supposing them to be drafts. In the conversation at the notary's office he told the appellee he had the drafts ready to be delivered when the security was perfected. Indeed, he continued under the impression and belief that the instruments were in fact drafts until after the failure of the bank had occasioned investigation. On the other hand the appellant received them, supposing them to be drafts, and was enlightened as to their real purport only when he sought to make a payment upon his land purchase. The cashier of the bank who issued the checks says that Dr. White asked for drafts. He does not claim that he explained the difference in the character of the instruments, but says appellant took them without objection. It is quite probable that the cashier, knowing that his bank had no money in its correspondent's hands against which to draw the drafts, issued the bank's check upon itself, without explanation, in the hope that the hour of confessed failure might thereby be postponed. The ease with which the deception was practiced is still further explained by the fact that the blank form on which the checks were drawn is identical with the one on which the bank drew its drafts. The check being converted into a draft by impressing with a rubber stamp on the lower left-hand corner the words " To St. Joseph Stockyards Bank, St. Joseph, Missouri." That men not familiar with banking business and methods should have been misled, as both appellant and appellee appear to have been, into the belief that they were getting bank drafts, and that these drafts would be effectual to transfer to the appellee the amount of money agreed to be loaned, is not at all strange, and it is not

necessary to the disposition of this appeal that any question be raised or entertained as to the good faith of either of them.

If this were a case in which, as urged by appellant's counsel, the appellee could fairly be said to have negotiated for the purchase from appellant of checks or drafts which had been drawn by the Citizens' Bank, it could then be conceded that, under the ordinary rule, the delivery of the instruments which were the subject of the negotiation would have served to pass the title, and, in the absence of fraud or misrepresentation by the appellant, the risk of the bank's failure before payment would have been borne by the former. But such is not the case here presented. Appellee was not purchasing or desiring to purchase commercial paper of any kind from the appellant. He was a borrower, seeking a loan of money with which to complete a land purchase. The appellant undertook to lend him the desired sum of money, not to sell him commercial paper or securities. The terms of the loan had been fully agreed upon before anything was said as to the manner or form in which the specified sum should be paid over and the checks or drafts were given and accepted not as the money itself, but as a convenient mode of obtaining the money. That such is the effect of payment by check or draft in the absence of an agreement to receive the paper in satisfaction or extinguishment of the original obligation is well settled. 3 Randolph, Com. Paper, section 15; *Finney v. Edwards,* 75 Va. 44; *Brown v. Kewley,* 2 Bos. Pl. 518; *Weddigen v. Fabric Co.,* 100 Mass. 422; *Bank v. R. R. Co.,* 44 Minn. 224 (46 N. W. 342, 560, 9 L. R. A. 263, 20 Am. St. Rep. 566); *Born v. Bank,* 123 Ind. 78 (24 N. E. 173, 7 L. R. A. 442, 18 Am. St. Rep. 312); *Bickford v. Bank,* 42 Ill. 238 (89 Am. Dec. 436); *Good v. Singleton,* 39 Minn. 340 (40 N. W. 359). Payment by check is said in these and numerous other authorities to be conditional only, and becomes effective to discharge the obligations upon which they are delivered only when duly honored. This is also true

*Marginal note: 1. LOANS: acceptance of bank check or draft: risk of payment: intent.*

under ordinary conditions where the party under obligation attempts to pay money by means of bills of exchange drawn by and upon third parties. See *Weddigen v. Fabric Co.,* 100 Mass. 422; *Clark v. Young,* 1 Cranch (U. S.) 181 (2 L. Ed. 74); *Insurance Co. v. Goble,* 51 Neb. 5 (70 N. W. 503).

A contrary rule has been announced in Massachusetts, Maine, and Indiana, where the giving of a check, note, or draft for a debt or obligation to pay money is held to operate as a payment or extinguishment of the obligation, but elsewhere the authorities are quite unanimous in support of the rule as we have stated it. But even in the States named it is held to be a rule of presumption only, and that the intention of the parties when expressly declared or when shown by collateral facts and circumstances will be allowed to prevail. *Duncan v. Kimball,* 3 Wall. (U. S.) 37 (18 L. Ed. 50). In the application of this doctrine a distinction has frequently been drawn between checks, drafts, and notes received upon a precedent indebtedness, and those received in the transaction out of which the indebtedness arises, and it is sometimes said that the delivery and acceptance of the unindorsed check, draft, or note of a third party for a debt of contemporaneous origin will operate as payment. In support of this proposition, no case has been more frequently cited than *Whitbeck v. Van Ness,* 11 Johns. (N. Y.) 409 (6 Am. Dec. 383), a decision which was clearly right upon the facts involved. In that case one Deane was indebted to Van Ness in the sum of $90, and Van Ness, desiring to purchase a horse owned by Whitbeck, offered to give him $90 for it, if the latter would accept in payment the note of Deane for that amount. This offer was accepted, and Deane, at the request of Van Ness, made his note direct to Whitbeck. The note not being paid, and the maker proving insolvent, Whitbeck sued Van Ness for the purchase price of the horse. As to the record presented, the court says: " Nothing can be more manifest than that both parties perfectly understood that the plaintiff should take Deane's note at his own hazard."

With that fact established, no room was left for argument. The agreement to take the note at his own risk being made manifest, the transaction was one of exchange of one commodity for another instead of a sale in the ordinary sense of the word, and plaintiff had no more claim for recovery against Van Ness than he would have had if, instead of the note, he had accepted shares of corporation stocks in exchange for his horse, and later ascertained that the shares were less valuable than he supposed. And it may be fully conceded that in all cases where a party holding the note or other written obligation of another sells it or exchanges it for other property without indorsement, and without fraud, no presumption of liability arises against him in the event the paper proves to be worthless. But, where the note, check, or draft is not given and accepted as the thing for which the receiver has bargained, but as a convenient method by which the money it represents may be transferred from one party to the other, there is a presumption that the payment is conditional upon the paper being honored on due presentation. It is undoubtedly true that as to the presumption attending transactions of this kind and the burden of proof concerning the intention of the parties, the cases are in considerable confusion, but the exigencies of the present appeal do not require any attempt on our part to elucidate the true rule in these respects; for, wherever the burden be placed, we believe the record sufficient to support the finding of the trial court. That the intention of the parties shall prevail in determining whether the delivery and acceptance of a note, check, or draft, drawn by the debtor or by a third person are to be treated as payment in themselves, or as payment conditional upon the honoring of the paper by the drawee, is held with substantial unanimity by all the courts.

There are a few exceptional cases, principally in the State of New York, where the court has seemed to trench upon the province of the jury respecting this matter of

fact (see Whitbeck v. Van Ness, *supra; Gibson v. Tobey,* 46 N. Y. 637 (7 Am. Rep. 397); *Hall v. Stevens,* 116 N. Y. 201 (22 N. E. 374, 5 L. R. A. 802), and dispose of the question as one of law, but the courts of that State appear, nevertheless, to be committed to the rule as above stated that the intention of the parties will control the question of payment, and that such intention may be established by proof of an express agreement or of circumstances from which an agreement or understanding may be implied. *Roberts v. Fisher,* 43 N. Y. 159 (3 Am. Rep. 680); *Noel v. Murray,* 13 N. Y. 167; *Monroe v. Hoff,* 5 Denio (N. Y.) 360; *Porler v. Talcott,* 1 Cow. (N. Y.) 383; *Ontario Bank v. Lighlbody,* 13 Wend. (N. Y.) 101 (27 Am. Dec. 179); *Johnson v. Weed,* 9 Johns. (N. Y.) 310 (6 Am. Dec. 279); *Vail v. Foster,* 4 N. Y. 312; *Roget v. Merritt,* 2 Caines (N. Y.) 116. Such, also, as we have said, is the current of authority in other jurisdictions. *Dugan v. Pac. Boom Co.,* 6 Wash. 593 (34 Pac. 157, 36 Am. St. Rep. 182); *Hunter v. Moul,* 98 Pa. 13 (42 Am. Rep. 610); *Insurance Co. v. Smith,* 6 Har. & J. 166 (14 Am. Dec. 268); *Wainwright v. Webster,* 11 Vt. 576 (34 Am. Dec. 707); *Briggs v. Holmes,* 118 Pa. 283 (12 Atl. 355, 4 Am. St. Rep. 597); *Fleig v. Sleet,* 43 Ohio 53 (1 N. E. 24, 54 Am. Rep. 800); *Hoeflinger v. Wells,* 47 Wis. 628 (3 N. W. 589); *Insurance Co. v. Goble,* 51 Neb. 5 (70 N. W. 503); *Duncan v. Kimball,* 3 Wall. (U. S.) 37 (18 L. Ed. 50); *Sebastian v. Codd,* 77 Md. 293 (26 Atl. 316); *Gillett v. Knowles,* 108 Mich. 602 (66 N. W. 497); *Zerrano v. Wilson,* 62 Mass. 424; *Weddigen v. Fabric Co.,* 100. Mass. 422; *Goldshide v. Cottrell,* 2 M. &. W. 20; *Stedium v. Corch,* 1 Esp. 3; *Millard v. Argyle,* 6 M. & G. 40; *Owenson v. Morese,* 7 T. R. 64; *Kearslake v. Morgan,* 5 T. R. 513; *Alcock v. Hopkins,* 60 Mass 484; *Wylly v. Collins,* 9 Ga. 240; *Johnson v. Bank,* 25 Ga. 643; *Belshaw v. Bush,* 11 C. B. 191; *Valpy v. Oakley,* 16 Q. B. 951; *Turney v. Dodwell,* 3 E. & B. 136.

In considering the question of the intent of the parties

in the instant case, we must not close our eyes to the facts attending and characterizing the transaction between the parties, or to the manner in which such transactions are usually negotiated and consummated in the business world. The vast majority of men having money to invest in any considerable sum do not carry their funds upon their person or in their desks, but keep them on deposit in some bank, and, save in exceptional cases, the delivery of money upon a loan or other investment is accomplished through the medium of checks, orders, or drafts, and not by immediate and direct transfer of the money. Of such transactions, a leading writer says that, in the absence of any agreement to the contrary, a payment by note or bill of exchange " is always presumed to be conditional." Benjamin on Sales (2d Ed.) section 729. The paper is given and received upon the mutual faith and understanding of the parties that it represents actual value to its full nominal amount, and that on due presentation to the drawee it will be honored, and only upon its being thus honored does the payment become effective and absolute. This has often been held true even where the person entitled to receive the money expresses a preference for its payment by check, but does not agree to assume the risk of its being honored. *Everett v. Collins,* 2 Campbell, 515; *Hughes v. May,* 4 A. & E. 954; *Cohen v. Hale,* 3 Q. B. D. 371.

In Millard v. Argyle, *supra,* Maule, J., says: "Payment is not a technical term. It has been imported into law proceedings from the exchange and not from law treatises. When you speak of paying cash, that means satisfaction; but when by bill, that does not impart satisfaction unless the bill is ultimately taken up." So, also, in Stedman v. Gooch, *supra,* it is said by Lord Kenyon that " the law is clear that if in payment of a debt the creditor is content to take a bill or note payable at a future day, he cannot legally commence action on his original claim until such bill or note becomes payable, but if such bill or note

is of no value, he may consider it as waste paper, and resort to his original demand." When a shipper was about to pay the freight upon goods being shipped by him, the agent of the carrier expressed his preference to receive it in a check, which was given him accordingly. The drawer of the check had the money in the bank to which the check was directed, but, on the following day, and before the check was presented for payment, the bank failed. No agreement being shown that the check was intended to be received as absolute payment, the carrier was held entitled to recover on the original consideration. *Railroad Co. v. Collins,* 1 Abb. N. C. 47, affirmed in 57 N. Y. 641.

Judge Story, in his well-known treatise on Promissory Notes (section 104), says, " In general by our law, unless otherwise especially agreed, the taking of a promissory note for a pre-existing debt or a contemporaneous consideration is treated as a conditional payment only; that is, as payment only in case it is duly paid at maturity." Where A. sold goods to B. at an agreed price, and received in payment the note of C. without B.'s indorsement, a recovery by A. upon the original consideration (C. becoming insolvent before the note fell due) was upheld on appeal, the court there saying: " If it was a part of the original agreement between the parties that plaintiff should take the note in full satisfaction of the goods sold, so that he, and not the defendants, should run the risk of the note, then undoubtedly the plaintiff has no right of action. But the fact whether such was or was not the agreement was submitted to the jury, and they have decided in favor of the plaintiff. The books all agree that there must be a clear and special agreement that the vendor shall take paper absolutely as payment, or it will be no payment if it afterwards turns out to be of no value. And this rule requiring such a special agreement ought to be adhered to, for it is well calculated to prevent fraud and support justice. *Johnson v. Weed,* 9 Johns. (N. Y.) 310 (6 Am. Dec. 279). If this language were to be

construed as requiring in all cases proof of an express agreement by the recipient of the bill or note to receive it as absolute payment, it is probable that it states the rule too rigidly, for, as we have already shown, the generally accepted doctrine gives effect to the implied, as well as the express, agreement or understanding of the parties. We think, however, that the passage we have quoted was not intended as requiring the establishment of an express agreement in all cases to sustain a claim of payment by the acceptance of commercial paper, but rather as emphasizing the proposition that the mere fact of such delivery and acceptance upon a money demand in the ordinary course of business gives rise to no presumption of absolute payment. It is true that, in Whitbeck v. Van Ness, *supra,* the court indulges in some criticism of the language used in Johnson v. Weed, but concedes that it was correctly decided. The same language was thereafter quoted approvingly in *Bank v. Lighlbody,* 13 Wend. (N. Y.) 112 (27 Am. Dec. 179), and by Sutherland, J., in *Porter v. Talcott,* 1 Cow. (N. Y.) 384. It may also be said of the opinion in the Whitbeck case that, under the conceded or assumed state of facts then before the court, the criticism of Johnson v. Weed is clearly obiter.

In *Hoeflinger v. Wells,* 47 Wis. 631 (3 N. W. 589), the distinction sought to be made concerning the burden of proof between cases where the bill or note is transferred upon an existing indebtedness and cases where the indebtedness is contracted at the time, is said to be " Not supported by the weight of authority."

In *Gardner v. Gorham,* 1 Doug. (Mich.) 507, the plaintiff sold to the defendants a quantity of goods, and, as part of the same transaction, defendants transferred to plaintiffs certain notes executed by third parties. Defendants made some representations as to the value of these securities, but expressly refused to indorse or guaranty their payment. The notes proving worthless, plaintiffs brought action to recover the price of the goods sold. Reversing a

judgment for the defendants the court expressly waives any consideration of the question of fraud or false representation, and says that the question whether the notes were received as payment was one of fact on which the plaintiff was entitled to go to the jury. It is there said: " It is believed that no principle of law is better established at the present day than that the giving of a promissory note for goods sold, or for any other valuable consideration, is not payment unless it is agreed to be so taken, and, in this respect, it makes no difference whether the note be given for a precedent debt or for a debt contemporaneously with the agreement." To same effect, see *Crawford v. Berry,* 6 Gill & J. 72. In this case, the Maryland court says: " If the appellee sold the oxen to the appellant, and received the single bill of Magruder on that account without an agreement to receive it as payment for the oxen, and to run the risk of its being paid or not, it was not an extinguishment of the debt due for the oxen which continued liable to be enforced if the assigned bill, without laches on part of the appellee, should not be paid." The same court, in *Insurance Co. v. Smith,* 6 Har. & J. 166 (14 Am. Dec. 268), says: " Where a party, at the time of contracting a debt, assigns the note of a third person to the vendor, such note does not extinguish the original cause of action unless it was received as payment or satisfaction of the original contract." Responding to a call of his creditor, requesting remittance of amount due by draft, a debtor purchased and forwarded a draft for the proper amount, but the bank issuing the paper failed before it was presented for payment, and the loss was held to fall upon the debtor who purchased it. *Insurance Co. v. Goble,* 51 Neb. 5 (70 N. W. 503). This decision goes farther perhaps than we might be disposed to follow under similar circumstances. " Nothing is better settled than that a check is not payment but is only so when the cash is received on it. There is no presumption that a creditor takes a check in payment arising from the mere fact that he accepts it from

his debtor." *Bank v. Railroad Co.,* 44 Minn. 224 (46 N. W. 342, 560, 9 L. R. A. 263, 20 Am. St. Rep. 566). Whether the delivery of cashier's checks like those involved in this suit was intended and accepted as absolute payment has been held to be a question of fact for the jury. *Briggs v. Holmes,* 118 Pa. 283 (12 Atl. 355, 4 Am. St. Rep. 597). Even in Massachusetts, where the giving of a bill or note is *prima facie* payment of the original obligation, it has been held that, where goods were sold under an agreement, the seller would receive his payment by drafts drawn by him on a third person, and the drafts were in fact so drawn and accepted by the drawee, but the latter became insolvent before these obligations were taken up, the seller could abandon the drafts, and recover of the purchaser as for goods sold and delivered. It was further held that a surrender of the drafts to the drawer was not essential to a maintenance of the action if tender be made on the trial. *Alcock v. Hopkins,* 60 Mass. 484. See, also, *Zerrano v. Wilson,* 62 Mass. 424. The same rule has been applied in Georgia, in *Johnson v. Bank,* 25 Ga. 643, and *Weaver v. Nixon,* 69 Ga. 699.

In *Weddigen v. Fabric Co.,* 100 Mass. 422, we have another case where, as part of the original contract of sale, the seller was to receive bills of exchange drawn by one third party upon another. Goods were sold, drafts drawn and accepted, as agreed; and receipt in full issued, but, upon failure of the drawee, the seller was permitted to recover the price of the goods from the purchaser. To same effect is *Sebastian v. Codd,* 77 Md. 293 (26 Atl. 316). And see *Vail v. Foster,* 4 N. Y. 312; *Times Co. v. Benedict,* 37 Ill. App. 250; *Bradway v. Groenendyke,* 153 Ind. 508 (55 N. E. 434); Benj. on Sales (2d Ed.) section 729; *Loeschigh v. Blun,* 1 Daly (N. Y.) 49; *Bill v. Porter,* 9 Conn. 23; *Davidson v. Bridgeport,* 8 Conn. 473; *Heartt v. Rhodes,* 66 Ill. 351.

In *Huse v. McDaniel,* 33 Iowa, 406, the plaintiff sold land and took in part payment therefor certificates of de-

posit. These certificates of deposit were not negotiable, and were not indorsed or guaranteed by the defendant, and in that respect were not unlike the instruments now under consideration. The certificates not being paid on presentment plaintiff brought suit and obtained judgment thereon against prior indorsers (Huse v. Hamblin, 29 Iowa, 501), and the judgment proving uncollectible, he brought an action against the purchaser upon the original contract of sale, and this court held him entitled to recover. In an earlier case (Gower v. Halloway, 13 Iowa, 154) we stated our view as follows: " The general rule is that the giving of a bill of exchange or a promissory note for goods sold, or for an existing contract, is not to be regarded as payment of the indebtedness unless there is an express agreement to that effect."

But even if we should go to the extreme of some of the precedents relied upon by the appellant, and hold that the appellee in the instant case is required to assume the burden of showing the payment by cashier's checks was conditional rather than absolute (a proposition which we do not decide), we must still hold that the requirement has been met. In addition to the circumstances already alluded to, which in themselves tend to show that the parties did not contemplate a mere sale and delivery of cashier's checks or drafts, the appellee, as a witness, expressly negatives such intent, and the appellant, though a witness in his own behalf, does not testify otherwise. It is the settled rule of this court that the intent with which the note or check is received is a fact to which the parties may testify. Kruse v. Lumber Co., 108 Iowa, 355; Browne v. Hicker, 68 Iowa, 330; Frost v. Rosecrans, 66 Iowa, 405. Taking the facts as admitted, or as they have been disclosed without dispute in the testimony, it is inconceivable that when the papers had been exchanged appellant supposed he had simply sold two cashier's checks, representing the nominal amount of $4,400, the payment of which was at the appellee's risk. Assuming as we do that appellant was acting in entire good

faith, he believed that he had the money in the bank, and that the paper would be promptly honored on presentation. He made a loan of that money, and not simply an assignment of his claim against the bank. Had he said to the appellee: "Here are two cashier's checks, which I expect you to take as money, and if dishonored on presentation you must bear the loss," it is not in the least probable that they would have been accepted. Appellee was in the need of money, and was borrowing it for immediate use. He was not in a situation to deal with uncertainties or to engage in any speculation upon the possible insolvency of the bank, and he took the checks as countless thousands of people in the world of business are taking them every day, not as money, and not as absolute payment, but as an assurance that, upon making due demand at the place of deposit, payment would then and there be consummated.

II. There is another view upon which the judgment below can well be sustained. It is shown beyond question that at the date of the attempted loan the private banker

2. SAME: equitable relief.

with whom appellant's money was deposited was hopelessly insolvent, and within a few hours thereafter closed his doors in bankruptcy. When the checks were delivered, and at all times thereafter, there was not sufficient money in the bank with which to honor them, and, had they been immediately presented with a demand for the cash, they would not have been paid. The appellant's money had already been lost, though he was ignorant of the fact. It was in this condition of affairs that the parties exchanged papers, both believing the money was in the bank with which to meet the checks and consummate the loan. Had the appellant known of the true condition of the bank, and concealed the facts from the appellee, thereby leading him to take the worthless checks, he would have been guilty of a fraud for which an action at law would lie. Under such circumstances, where both parties act in good faith upon the supposition that the subject of their negotiation is a

thing of value, when in fact it is wholly or comparatively worthless, we have often held that the party who has been misled to his injury may have relief on the ground of mutual mistake. In such case "natural justice demands" that the parties be restored to their original situation, and if either refuses equity will enforce restoration. *Hood v. Smith,* 79 Iowa, 624.

This rule has not infrequently been applied even in law actions in cases much like the one at bar. In *Roberts v. Fisher,* 43 N. Y. 159 (3 Am. Rep. 680), the plaintiff sold goods under an agreement by which he was to accept in payment the notes of third persons. In pursuance of that agreement defendants purchased the goods for which they delivered and plaintiff accepted the note of a third person. This person was in failing circumstances, but the fact was unknown to either plaintiff or defendant. The note proving worthless, plaintiff was permitted to recover from defendants on account for the goods sold. The court says:

Upon principles of justice, it would seem that a man ought not to be allowed to pay a debt with worthless paper, though both parties supposed it to be good. . . . We do not intend to say that the parties could not have agreed that this note should be received in payment whether the makers had failed or not. But that is not this case. The parties made the contract in ignorance of a material controlling fact, *viz.,* the insolvency of Rice & Co. Had that been known to the plaintiff, it is quite clear that they would not have accepted this note; the contract would not have been made. Had it been known to the defendants (as the proofs show it was not), the transfer of the note would have been a fraud upon the plaintiffs, and would have annulled the contract. Both being ignorant of such fact the plaintiff is allowed to rescind.

See, also, *Duden v. Waitzfelder,* 2 Abb. N. C. (N. Y.) 295; *Town v. Grant,* 104 Ind. 168 (1 N. E. 302); *Leake v. Brown,* 43 Ill. 372; *Lightbody v. Bank,* 11 Wend. (N.

Y.) 11; *Ontario Bank v. Lightbody,* 13 Wend. (N. Y.) 101
(27 Am. Dec. 179); *Baldwin v. Brown,* 16 N. Y. 359;
*Benedict v. Field,* Id. 595.

In his work on Bills and Notes, page 671 (2d Ed.)
Mr. Bigelow says, in substance, that, if paper which has
been given and received in a commercial transaction is
to be treated as a commodity or property, instead of the
mere representation of money or property, there may be
some reason for applying the doctrine of caveat emptor;
but, if it is only the symbol of property, if the receiver ac-
quires only a promise to pay money, then caveat emptor is
not applicable. He then proceeds in language quite perti-
nent to the present case.

Nor should the fact of hardship to the vendor be per-
mitted to enter into the consideration of a case in which the
purchaser is in no way responsible for that which brings
upon him that result. If the vendor loses his money, he
loses it because of a fact anterior to the purchase by the
plaintiff, a fact which existed while the paper was in the
vendor's hands. The vendor had already lost; the paper
was good for nothing to him. Nor does the fact that he
supposed it to be good justify him in keeping the money
or property received, which could only have been given for
it by the purchaser upon the same supposition that it was
good. There has been a failure of consideration.

Equally appropriate in this connection is the lan-
guage of Redfield, J., in *Torrey v. Baxter,* 13 Vt. 457,
where he says that if the note or bill taken in payment of
a debt " is by mistake defective, so that no recovery can be
had upon it, I apprehend the creditor may always resort
to his original demand. So, too, if he receipts the note or
bill of a third person which proves unavailable without his
fault." It may further be noted that the cases in which it
has been held that a presumption of absolute payment at-
tached to the delivery and acceptance of a note or bill involve
the consideration of negotiable paper, and does not apply

with equal force to paper which is nonnegotiable. *Bradway v. Groenendyke,* 153 Ind. 508 (55 N. E. 434). The checks here in controversy were not made payable in money, but " in current funds," and it is the settled law of this State that such instruments do not have the qualities of negotiable paper. *Huse v. Hamblin,* 29 Iowa, 501. This distinction was given weight in *Huse v. McDaniel,* 33 Iowa, 406. Again there are authorities which seek to make the presumption as to intention of absolute payment by the delivery and acceptance of the bill or note of a third party turn upon the question whether the paper is indorsed by the party delivering it, but this court, in *Huse v. McDaniel,* expressly refused to follow that doctrine, saying that the reasons assigned for the rule " are not such as in our opinion justify us in attributing different effects to the two acts of the debtor."

III. It is said finally that the act of the appellee in taking the cashier's checks back to the bank, and receiving drafts therefor deprives him of the right to recover even if otherwise he might have had a cause of action; and, further that no right of action could arise until he had returned or tendered a return of the checks. We think neither contention sound. In the first place the appellant, as a witness, concedes that he did not ask the banker for cashier's checks, but for drafts, and did not know that the papers delivered by him to appellee were not drafts until after the failure had become public. He called for drafts, received and delivered to appellee what they both supposed were drafts, and when appellee attempting to use them ascertained their true character, he went to the banker, and got just what appellant had promised and undertaken to give him. The checks and drafts were equally worthless, and the act of the appellee in no manner prejudiced or caused loss or injury to the appellant. Even the negotiation or transfer of a check or bill so received does not affect the creditor's right to recover upon the orig-

3. CANCELLATION OF INSTRUMENTS: failure of consideration: tender.

inal consideration if such check be returned or tendered upon the trial, or be otherwise shown to be no longer an outstanding demand against the debtor. *Davidson v. Bridgeport*, 8 Conn. 477; *Alcock v. Hopkins*, 60 Mass. 484; *Brown v. Scott*, 51 Pa. 357; *Gillett v. Knowles*, 108 Mich. 602 (66 N. W. 497); *Gallagher v. Ruffing*, 118 Wis. 284 (95 N. W. 117); *Holmes v. Briggs*, 131 Pa. 233 (18 Atl. 928, 17 Am. St. Rep. 804); *Clark v. Young*, 1 Cranch (U. S.) 181 (2 L. Ed. 74); *Heartt v. Rhodes*, 66 Ill. 352; *Zerrano v. Wilson*, 62 Mass. 424; *Herider v. Phœnix Loan Ass'n*, 82 Mo. App. 427; *Burdick v. Green*, 15 Johns (N. Y.) 247. The rule would not be different had appellee proceeded to obtain judgment on the worthless checks or drafts. Huse v. McDaniel, *supra*.

Nor do we find merit in the suggestion of the appellant by way of reply argument that this case is governed by the negotiable instrument statute, prescribing the nature of the warranty implied in negotiating an instrument by delivery or qualified indorsement. Chapter 130, p. 87, Acts 29th General Assembly, section 65. As to the paper here involved, it is as we have seen nonnegotiable, and is probably not affected by that statute, but be that as it may this action is not based upon a breach of warranty in the sale or negotiation of the checks. It is unnecessary to prolong this discussion already too greatly extended. The appellant has met with a regrettable loss, but his misfortune is in no manner chargeable to the appellee. His loss was as real, tangible, and certain before and at the time he undertook to make the loan as it is now. To say that he may hold and enforce the note and mortgage for which the appellee has never received the slightest value is to say that he may, without having furnished the least consideration, compel the appellee to assume the responsibility of his faithless banker and make good the wasted deposit. The amount involved is equal to the accumulated savings of the lifetime of a fairly successful man in the

4. SAME: nature of action: statutory regulation.

ordinary walks of life, and the courts will not readily, nor without some imperative rule requiring it, condemn one party to an unrecompensed life of labor for another.

In our judgment the record fairly supports the conclusion of the trial court, and the decree appealed from is *affirmed*.

DEEMER, J. (dissenting).— It is well to have clearly in mind the ultimate and controlling facts in solving the legal principles involved. Plaintiff had the option of taking the amount of his loan in " check or draft," or in " money, check, or draft," and he agreed to take it in two drafts. Pursuant to the agreement, he received the two cashier's checks mentioned in the opinion. These he accepted without protest, and at no time has he ever complained that defendant did not give him the paper to which he was entitled. When he came to negotiate with the agent of the seller of the property this agent advised the return of the checks, and that they be exchanged for drafts. Of this defendant had no notice whatever, nor was he asked to substitute drafts for the checks. At the suggestion of the notary, plaintiff went to the bank, returned the checks, which were thereupon marked " paid " and received the drafts upon the Stockyards Bank of St. Joseph, Mo. Defendant at all times had more than enough on deposit to take up the checks, and he had no knowledge whatever of the insolvency of the bank. While the bank was perhaps insolvent when it issued the checks and the drafts, it was still a going concern, had not closed its doors, and neither plaintiff nor defendant had knowledge of its insolvency. Plaintiff had not returned, nor did he offer in his pleading to return, either the checks or the drafts, and it is not shown what are the assets of the insolvent bank. To my mind, it is a case where plaintiff should be held to have received exactly what he agreed to take, and where he himself, without the knowledge, consent or acquiescence of defendant, voluntarily and of purpose converted the obligation of the defendant into a promise of the

bank, which, so far as this case is concerned, he yet retains. With the drafts issued upon the St. Joseph Bank, defendant had no connection. He was not a party to, and was in no manner responsible thereon. If, as the majority hold, the checks were not taken in payment, defendant's obligation to plaintiff was the primary one; the bank being secondarily liable or liable not at all if plaintiff did not seek to enforce liability. When plaintiff took the draft without the knowledge or acquiescence of defendant, the bank became liable thereon, and this liability remained until acceptance by the St. Joseph Bank, and after that, secondarily liable if liable at all. Defendant could not have been held liable upon that instrument at any time. While it was shown that the Citizens' Bank of Mt. Ayr was insolvent the next day after the drafts were drawn, there is no testimony that it had no assets with which to pay the check, and no testimony that it will not pay dividends to its creditors; indeed, the contrary appears. And, as we have said, plaintiff has not returned either the checks or the drafts. Defendant has nothing upon which to predicate a claim to any part of the assets of the bank represented by these checks and drafts.

·With the vexed question as to whether the taking of a check for a contemporaneous debt or promise is presumptively a payment or not, I shall not deal; for, whatever the rule here, it is very firmly established, and, as I believe, without any serious conflict in the authorities, that, if the party who receives it cashes, negotiates, or in any manner changes the obligation of the parties to the original instrument, he by that act treats the instrument as payment, and, if loss thereafter follows by reason of failure to collect the substitute, no recovery can be had upon the original obligation. In other words, whenever the holder of a check makes it his own by substituting some other liability, he cannot be heard to say that the check is not good. In support of this, I cite the following authorities: *Oddie v. Bank,* 45 N. Y. 735 (6 Am. Rep. 160); *Warrensburg v.*

*Zoll,* 83 Mo. 97; *Smith Co. v. Mitchell,* 117 Ga. 772 (45
S. E. 47, 97 Am. St. Rep. 217); *Strong v. King,* 35 Ill. 9
(85 Am. Dec. 336); *Woodville v. Reed,* 26 Md. 179; *Barn-
ard v. Graves,* 16 Pick. (Mass.) 41; *Sellars v. Johnson,* 65
N. C. 104; *Strong v. Hart,* 6 B. & C. 160; *Ex parte Whitte-
more,* 3 Mont. & A. 627.  By putting the checks in circula-
tion, and accepting a substitute therefor, plaintiff elected to
treat them as payment, and cannot complain of these substi-
tutes because they were worthless. Byles on Bills, 389;
*Titus v. Bank,* 35 N. J. Law, 588; *Cragie v. Hadley,* 99 N.
Y. 131 (1 N. E. 537, 52 Am. Rep. 9); *Oddie v. Bank,*
45 N. Y. 735 (6 Am. Rep. 160); Smith v. Mitchell, *supra;*
*Board v. Robinson,* 81 Minn. 305 (84 N. W. 105, 83 Am.
St. Rep. 374); *Wasson v. Lamb,* 120 Ind. 514 (22 N. E.
729, 6 L. R. A. 191, 16 Am. St. Rep. 342); *Bank v. Burk-
hart,* 100 U. S. 686 (25 L. Ed. 766); *Smith v. Ferrard,*
7 B. & C. 19; *Loth v. Mothner,* 53 Ark. 116 (13 S. W.
594); *Southwick v. Sax,* 9 Wend. (N. Y.) 122; *First Bank
v. Leach,* 52 N. Y. 350 (11 Am. Rep. 708); *Tuttle v. Chap-
man,* 10 Iowa, 437; *Downey v. Hicks,* 14 How. (U. S.)
240 (14 L. Ed. 404); *Strong v. Ten Cent Tutor Bldg. &
Loan Ass'n,* 189 Pa. 406 (42 Atl. 46); *Watkins v. Parsons,*
13 Kan. 426; *Lineweaver v. Slagle,* 64 Md. 465 (2 Atl. 693,
54 Am. Rep. 775; Randolph on Com. Paper, section 1551.
I shall briefly refer to some of these cases to show how
clearly in point they are.

In *Tuttle v. Chapman,* 10 Iowa, 437, the maker of a
note gave the payee an order on a third person with an agree-
ment that if collected it should be applied upon the note.
The payee delivered up the order to the drawee, and took
his note for the amount payable to himself at a future date.
It was held that the drawer was entitled to credit on his note,
although the note executed by the drawee was not collected.
It was said in the opinion that there was such a change in
the rights and obligations of the parties to the order that they

were severally discharged. That case is to my mind closely in point.

In *Loth v. Mothner,* 53 Ark. 116 (13 S. W. 594) defendants gave plaintiff a written order upon their banker to pay an account. The payee of the order, instead of demanding cash, took payment in St. Louis exchange. The draft proved worthless. In a. suit upon the original account, there was judgment for defendants. The Supreme Court of Arkansas said: " Having elected the mode of payment [of the order] they [plaintiff] cannot now repudiate it because the exchange proved worthless, but appellee's debt is satisfied — citing, among other cases, *Smith v. Ferrand,* 7 Bearn. & C. 19.

In *Challoner v. Boyington,* 83 Wis. 399 (53 N. W. 694) it is held that " if the note of a third person is received upon a sale of goods or for an indebtedness contracted at the time, the note will be deemed to have been taken by the vender in satisfaction unless the contrary be expressly proved, or unless the note be void and there be fraud or misrepresentation respecting it." See, also, *Ford v. Mitchell,* 15 Wis. 308; *Hall v. Stevens,* 116 N. Y. 201 (22 N. E. 374, 5 L. R. A. 802); Daniel, Neg. Inst., section 1264; *Gibson v. Tobey,* 46 N. Y. 637 (7 Am. Rep. 397); *Bayard v. Shunk,* 1 Watts & S. (Pa.) 95 (37 Am. Dec. 441). If this be the rule when the note is accepted at the time, it is clear that when the seller or borrower converts that note or check into another form of obligation, as in this case, into a draft without the consent of the buyer or lender, he should be held to assume the risk and the original debtor should be discharged.

In *Hall v. Stevens,* 116 N. Y. 201 (22 N. E. 374, 5 L. R. A. 802), plaintiff received for the sale of cattle, a draft from the purchaser, which was not signed or indorsed by him, the purchaser. The seller took the draft home and used it. The bank was insolvent when the draft was drawn, but neither party had knowledge of that fact. It was held

that the seller could not recover the purchase price of the cattle. It was also held that the insolvency of the bank cut no figure in the case, and for this *Lightbody v. Bank,* 11 Wend. (N. Y.) 9, and *Bank v. Lightbody,* 13 Wend. (N. Y.) 101 (27 Am. Dec. 179), are cited. See, also *Gibson v. Tobey,* 46 N. Y. 639 (7 Am. Rep. 397; *Whitbeck v. Van Ness,* 11 Johns. (N. Y.) 409 (6 Am. Dec. 383).

In *Gibson v. Tobey,* 46 N. Y. 639 (7 Am. Rep. 397) following *St. John v. Purdy,* 1 Sandf. (N. Y.) 9,˙ and *Whitbeck v. Van Ness,* 11 Johns. (N. Y.) 409 (6 Am. Dec. 383) it was held, under facts very similar to those here presented, that a seller of hogs could not recover the purchase price. See, also, *Cheltenham Co. v. Gates Co.,* 124 Ill. 623 (16 N. E. 923); *Smith v. Bettger,* 68 Ind. 254; *s. c.,* 34 Am. Rep. 256. I should not be disposed to go so far as these cases, for I believe the better rule is to treat the intention of the parties as the test. But, when the seller or borrower elects to convert the note or check received by him as cash and negotiates, and thus converts or substitutes the note or check into something which he regards as of value to him, he thus conclusively indicates his intention to treat the note or check as payment, and thereafter the risk is his. See, also, *Noel v. Murray,* 13 N. Y. 169.

In *First Bank v. Leach,* 52 N. Y. 350 (11 Am. Rep. 708) the holder of a check presented it to the drawee, and procured it to be certified by the bank upon which it was drawn. This was held to be a payment as between the drawer and the holder, and a discharge of the drawer. That case is closely in point here. In the instant case the holder for his own purposes converted the cashier's checks into drafts drawn by the bank, and the bank thus became the principal debtor. The bank became substituted for the defendant, and the loss must be borne by plaintiff. See, as directly in point upon this proposition, *Oddie v. Bank,* 6 Am Rep. 160; *Meads v. Bank,* 25 N. Y. 148 (82 Am. Dec. 331).

In *Smith v. Miller,* 43 N. Y. 173 (3 Am. Rep; 690) defendants, who were indebted to plaintiff, sent them a draft on a New York firm. This firm gave plaintiff its check for the draft upon presentation. Plaintiffs deposited the check in their own bank. After the making of the check, and before payment, the bank failed. The court held that plaintiff could not recover on its original debt. So, also, *Smith v. Mitchell,* 117 Ga. 772 (45 S. E. 47, 97 Am. St. Rep. 217), which holds to the same proposition, and *Board v. Robinson,* 81 Minn. 305 (84 N. W. 105, 83 Am. St. Rep. 374); *Pratt v. Foote,* 9 N. Y. 463.

In *Downey v. Hicks,* 14 How. (U. S.) 240 (14 L. Ed. 404) it is said a bill or note given for a debt is not deemed payment unless so expressly agreed, or it has been negotiated and is outstanding against defendant.

In *First Bank v. Burkhart,* 100 U. S. 686 (25 L. Ed. 766) it is held that the deposit of a check with credit to the depositor or any other species of conduct practically amounting to demanding and receiving a credit, is the equivalent of a cash payment. See, as sustaining the same proposition, *Wasson v. Lamb,* 120 Ind. 514 (22 N. E. 729, 6 L. R. A. 191, 16 Am. St. Rep. 342). Whenever the creditor appropriates a check received by him to his own use by negotiating it, it then becomes a payment of the indebtedness for which it was given. *Strong v. King,* 35 Ill. 9 (85 Am. Dec. 336). See, also, as directly. in point, Smith v. Ferrand, *supra; White v. Howard,* 1 Sandf. (N. Y.) 81.

In *Bunney v. Poyntz,* 4 B. & Ad. 568, it was held that a vender, who had negotiated a bill taken at the time of sale without making himself liable by that act, converted the conditional into an absolute payment. Aside from this, plaintiff is not entitled to relief without surrendering the check received by him. This is directly held in *Davidson v. Bridgeport,* 8 Conn. 472; *Carlin v. Heller,* 34 Iowa, 256; *Schuster v. Marden,* 34 Iowa, 181; *Alcock v. Hopkins,* 6 Cush. (Mass.) 484, and cases cited in volume 22, Am. Eng.

Ency. Law, 567; *Burdick v. Green,* 15 Johns. (N. Y.) 247.

In this case plaintiff has not surrendered either the checks or the draft. Nor does he offer to do so in the petition filed by him, and there is no testimony that either checks or drafts are entirely worthless.

II. The equitable doctrine presented by the majority in the second divisions of the opinion has no application to the facts, as I understand them. There was no mistake here as between plaintiff and defendant. Plaintiff received the very thing he agreed to take, and having cashed it, or what is the same thing, having converted it into a draft, the check was paid. But, whether this be true or not, defendant was in no sense a party to the drafts, and there could have been no mistake as between plaintiff and defendant regarding that matter. Moreover, there is no showing in this record that either checks or draft were absolutely worthless. Perhaps, if they were, no return was necessary; but there is no presumption that they were, and, in the absence of proof that nothing whatever can be realized thereon, there is no room for the equitable doctrine relied upon, and plaintiff cannot recover here without showing a return, or at least an offer to return, the checks and drafts. In all cases of rescission plaintiff must show the return of everything received by him no matter how inconsiderable in value. In other words, the parties must be put in *statu quo.* Of course, if the property is absolutely worthless for any purpose, no return is necessary; for the law does not require the doing of useless acts. See *Allen v. Pegram,* 16 Iowa, 163.

My investigation of the case leads me to believe that the judgment should be reversed.

McCLAIN, C. J. (dissenting).— While generally concurring with the dissenting views of Mr. Justice DEEMER, I desire to draw attention more specifically to one question which seems to me to be controlling in the disposition of

this case.   The vital question is whether plaintiff accepted
the cashier's checks, and voluntarily converted them for his
own purposes, and not in pursuance of any agreement or
arrangement with defendant, express or implied, into a dif-
ferent form of obligation on the part of the bank.   If he
did this, he plainly cannot recover.   The facts, as I gather
them from the record, are that plaintiff requested and sup-
posed he was receiving two drafts — one for $1,000, the
other for $3,400 — and that subsequently after consulting
with his own agent in regard to the most convenient form
of transmitting the money, and with full knowledge that
the instruments which he had received were not drafts, but
only cashier's checks, he surrendered them to the bank,
and accepted one draft in lieu thereof; and that this was
done without the knowledge or consent of defendant.   The
only plausible contention with reference to this surrender of
the checks which could relieve plaintiff from the conse-
quences which must follow his treating them as his own with
full knowledge of their nature, and thereby accepting them
in discharge of defendant's obligation to him, would be that
he was seeking to rectify a mistake, and was endeavoring to
secure the very thing which defendant had agreed to give
him, that is, a draft or drafts; and that this rectification
was therefore with the implied consent of defendant.   It
would not be claimed for plaintiff, I think, that if, having
received two drafts from the bank he had returned these
drafts for his own purposes and secured another draft as a
substitute for them, drawn for instance on a different bank,
he would not thereby have cut himself off from any re-
course on the defendant.   And yet this is what his conduct
plainly amounted to.   If the surrender of the checks for a
draft or drafts had been for the purpose of securing the very
thing which defendant had undertaken to give him, he would
have asked for two drafts in the respective sums of $1,000
and $3,400.   This he did not do, but, having changed his
purpose, he secured one draft for $4,400 on a specified bank,

whereas the original arrangement between him and defendant had not called for drafts on that particular bank, nor on any bank in particular.  It is this intervening change of purpose and action in pursuance of such change that precludes him from saying that, with the implied consent of defendant, he exchanged the cashier's checks for that which it was his original intention and purpose to accept.   In short, he did accept the checks which he had received as in full compliance with and satisfaction of defendant's obligation to him, and treated the checks as his own.

It must be confessed that the case is one very difficult of solution, but the difficulty arises out of the necessity of imposing on one of two innocent persons a loss which neither of them had any reason to anticipate, and it is necessary to take into account every circumstance tending to indicate the real intention of the parties in order to reach a just conclusion as between them.   I see no particular merit in making the loss fall upon one of them rather than the other, and should be better satisfied with the result indicated in the dissenting opinion of Mr. Justice Deemer than in that reached by the opinion of the majority of the court.